# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

MICHAEL JOSEPH SELLERS,

    Plaintiff,

vs.

DEERE & COMPANY a/k/a JOHN
DEERE COMPANY, and CLYDE
D'CRUZ, individual,

    Defendants.

No. C12-2050

RULING ON MOTION TO DISMISS

## TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
       A.   Can D'Cruz Be Sued Individually Under the ADEA and ADA? . . . . 5
       B.   Are Claims for Emotional Distress and Punitive
            Damages Recoverable Under the ADEA? . . . . . . . . . . . . . . . . 5
       C.   Does Sellers' Defamation Claim State a Cause of Action? . . . . . . . 9
       D.   Is Sellers' Negligence Claim Preempted by the
            ICRA or Otherwise Barred by the Statute of Limitations? . . . . . . . 11
       E.   Can Sellers Recover Damages which Predated
            Enactment of Iowa Code Section 216.6A? . . . . . . . . . . . . . . . . 11

V.     SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.    ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I.  INTRODUCTION

This matter comes before the Court on the Motion to Dismiss (docket number 20) filed by the Defendants on November 12, 2012, the Resistance (docket number 22) filed by the Plaintiff on November 16, and the Reply (docket number 30) filed by the Defendants on November 29.  Pursuant to Local Rule 7.c, the issue will be decided without oral argument.

## II.  PROCEDURAL HISTORY

On July 13, 2012, Plaintiff Michael Joseph Sellers filed a complaint in seven counts, alleging age discrimination and retaliation.  Named as defendants were John Deere Agri Services, Inc., Deere & Company aka John Deere Company ("Deere"), and Clyde D'Cruz. On October 29, Sellers filed an amended complaint naming Deere and D'Cruz, only.  The amended complaint is in eight counts, alleging discrimination, retaliation, defamation, and negligence.

On November 12, Defendants filed the instant motion, asking that D'Cruz be dismissed from certain counts, that Sellers' claims for emotional distress and punitive damages be dismissed from certain counts, that the defamation and negligence counts be dismissed, and that the Court dismiss certain damages which predated enactment of Iowa Code section 216.6A.  Sellers concedes that D'Cruz should be dismissed from Counts I, II, and III. Sellers also agrees that the claim for punitive damages should be dismissed from Count III.  Furthermore, Sellers agrees that his negligence claim (Count VIII) may be dismissed.  The remaining portions of Defendants' motion are resisted.

On November 26, 2012, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties.  In accordance with 28 U.S.C. § 636(c), and the consent of the parties, the case was referred to the undersigned magistrate judge for the conduct of all further proceedings.

## III. RELEVANT FACTS

According to his amended complaint,[1] Sellers began employment with Deere on June 1, 1979. Sellers has been employed by Deere since that time, except for a layoff period between 1985 and 1989. Sellers is not currently working because of a disability, but retains employment status with Deere. Sellers has worked in a variety of capacities, including inventory analyst, production expediter, material bank coordinator, inventory auditor, interfactory analyst, master scheduler, special projects, shop floor scheduler, production control specialist, tractor order fulfillment team, strategic buyer for hydraulics, OFP hydraulics buyer, and supply management process pro.

At some point, Deere apparently initiated a project (referred to as the "Global Evaluation Process") to define and grade specific job functions within the corporation, and the relative value of those jobs to the corporation. The goal of this job evaluation was to make "Labor Grade" assignments more objective. In July 2003, D'Cruz determined the grade levels for each job in Supply Management. The job descriptions had not yet been created at that time. In the spring of 2004, D'Cruz notified the employees in the supply management department of the new job titles, with the changes to be effective in August 2004.

Prior to the change, Sellers was a supply management process pro, at Labor Grade 7. He consistently received positive job performance ratings and had supervisory responsibilities, with approximately nine people reporting to him, and was responsible for more projects than any other process pro. Other persons holding the position of process pro were either Labor Grade 8 or 9.

From March 2003 to November 2003, Sellers reported directly to D'Cruz. During that time, Sellers participated in staff meetings and communicated directly with D'Cruz. Sellers heard D'Cruz call the employees who were over age 40 "sheep" and they "could

---

[1] For those purposes, the Court assumes the allegations are true. *U.S. ex rel. Raynor National Rural Utilities Co-op Finance, Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

be slaughtered," and that older employees carried a lot of "baggage" and "weaknesses." Sellers received these responses when he attempted to support the employment of individuals over age 40. Within three years after D'Cruz obtained his position as supervisor, every employee over the age of 40 had been switched to subordinate positions in the department. D'Cruz told Sellers that in his previous employment, he had replaced all male employees with females, because females were "easy to intimidate."

Following November 2003, Sellers expected to be promoted to Labor Grade 8. Instead, a new employee was brought in to report to D'Cruz, and Sellers reported to her. Sellers remained at Labor Grade 7, although he had approximately nine employees reporting to him as a process pro. After the global job evaluation was fully implemented, Sellers was demoted to a supply management specialist and stripped of his supervisory responsibilities, although he remained at Labor Grade 7. When Sellers outwardly supported two other employees who were subject to age and sex discrimination in the department, and made his own complaints of discrimination, Sellers became the subject of retaliation and a hostile work environment. As a consequence of the retaliation and hostile work environment, Sellers was diagnosed with PTSD, obsessive compulsive, anxiety, and panic attacks.

## IV. DISCUSSION

In their motion to dismiss, Defendants make five arguments:

1.      Sellers' claims under the Age Discrimination in Employment Act (ADEA) and Americans with Disabilities Act (ADA) — Counts I, II, and III — do not provide for individual liability against D'Cruz.

2.      Sellers cannot recover emotional distress damages or punitive damages on his claims brought under the ADEA — Counts I and III.

3.      Sellers' defamation claim — Count VII — fails to state a claim upon which relief may be granted.

4.     Sellers' negligence claim — Count VIII — is preempted by the Iowa Civil Rights Act (ICRA), or is otherwise barred by the statute of limitations.

5.     The equal pay provision of the ICRA does not apply retroactively and, therefore, to the extent Sellers seeks damages which preceded the statute's enactment — Count VI — the claim should be dismissed.

The Court will address each of the claims in the order presented.

### A.  Can D'Cruz Be Sued Individually Under the ADEA and ADA?

Counts I, II, and III of Sellers' amended complaint allege violations of the ADEA and ADA.  Sellers seeks judgment in each count against Deere *and* D'Cruz.  Defendants argue that neither the ADEA nor the ADA permit claims against individuals.  In his reply brief, Sellers concedes the point.  Accordingly, D'Cruz is dismissed from the claims brought by Sellers in Counts I, II, and III.

### B.  Are Claims for Emotional Distress and Punitive Damages Recoverable Under the ADEA?

In Counts I and III of his amended complaint, Sellers alleges violations of the ADEA.  Count I alleges retaliation, while Count III claims he was paid less than his "younger counterparts." In Count I, Sellers seeks compensatory damages — including emotional distress — and punitive damages.  Sellers does not claim emotional distress for Count III, but seeks compensatory and punitive damages.  Defendants argue that the ADEA does not authorize emotional distress damages or punitive damages.  Sellers does not resist the dismissal of his claim for punitive damages in Count III, but resists Defendants' request to dismiss his claims for emotional distress and punitive damages in Count I.

Generally, the "ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." *C.I.R. v. Schleier*, 515 U.S. 323, 326 (1995). *See also Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir. 1982) ("compensation for pain and suffering is not recoverable in ADEA actions").

Moreover, in *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 729 (8th Cir. 1992), the Court determined that punitive damages are also not recoverable under the ADEA.

In his resistance, however, Sellers asserts that emotional distress damages and punitive damages have been allowed in ADEA *retaliation* cases. In support of his argument, Sellers directs the Court to *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279 (7th Cir. 1993). In *Moskowitz*, a tenured biology professor was forced to retire upon reaching the mandatory retirement age permitted by the ADEA. Nonetheless, the professor filed suit under the ADEA alleging

> the university had discriminated unlawfully against him on account of his age by denying him research funds and facilities and travel grants before his retirement. These resources, he argues, would have given him post-retirement income and it is that lost post-retirement income that he seeks to recover by this suit.

*Id.* at 280. In discussing whether entitlement to post-retirement income should be considered "legal relief" under the ADEA, the Seventh Circuit Court of Appeals noted that "[a]n exception to the narrow construal of 'legal relief' has been recognized for the case in which the plaintiff charges that he was retaliated against for exercising his rights under the age discrimination law." *Id.* at 283. In support of its observation — which was *dicta* — the Court cited *Soto v. Adams Elevator Equipment Co.*, 941 F.2d 543, 551 (7th Cir. 1991) (finding that § 216(b) of the FLSA permits emotional distress and punitive damages for retaliation), and *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 112 (7th Cir. 1990) (finding that after the FLSA was amended in 1977, emotional distress and punitive damages are recoverable in an action for retaliation). That is, *Travis* and *Soto* interpret the second sentence of 29 U.S.C. § 216(b)[2] to authorize compensatory and

---

[2] The second sentence of § 216(b), which was added to the FLSA in 1977 when the statute was amended to include a cause of action for retaliation, provides: "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of (continued...)

punitive damages in retaliation cases because "legal relief" is a "term commonly understood to include compensatory and punitive damages." *Travis*, 921 F.2d at 111; *see also Soto*, 941 F.2d at 551 (discussing *Travis*).

There is a circuit split, however, regarding the availability of punitive damages in FLSA retaliation cases. In *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 933 (11th Cir. 2000), the Court determined that punitive damages are *not* available in FLSA retaliation claims under § 216(b). The Court rejected the Seventh Circuit's holding in *Travis*. *Id.* at 933. The Eleventh Circuit found that "the evident purpose of section 216(b) is compensation" and, "[t]herefore, punitive damages would be out of place in a statutory provision aimed at making the plaintiff whole." *Id.* at 934.

The Eighth Circuit Court of Appeals has not addressed whether emotional distress and/or punitive damages are available to plaintiffs in retaliatory ADEA or FLSA cases. Accordingly, the Court must determine whether the Eighth Circuit is likely to follow the Seventh Circuit's holding in *Travis* (permitting compensatory and punitive damages in FLSA retaliation cases) or the Eleventh Circuit's holding in *Snapp* (holding that punitive damages are not available in FLSA retaliation claims).[3]

The dispute remains active. In *Tucker v. Monsanto Co.*, 2007 WL 1686957 (E.D. Mo.), the Court noted that "[f]ederal circuits are divided on the issue of whether the FLSA allows for the recovery of punitive damages." The Court reviewed the holdings in *Travis*

---

[2](...continued)
this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."

[3] The ADEA states that it will be enforced in accordance with the remedies provided in the FLSA. 28 U.S.C. § 626(b). Furthermore, the language found in the ADEA — permitting the Court to grant "such legal or equitable relief as may be appropriate to effectuate the purposes" of the Act — is identical to that found in the FLSA. *Compare* 29 U.S.C. §§ 216(b) and 626(b). Accordingly, it seems clear that if emotional distress and punitive damages are not recoverable in an FLSA retaliation action, then they are not available in a comparable ADEA action.

and *Snapp*, and was persuaded by the Eleventh Circuit's reasoning in *Snapp*. *Id.* at *2.
The Court concluded the plaintiff was not entitled to recover punitive damages or
emotional distress damages in her retaliation action brought under the FLSA. Recently,
however, another district court judge in the Eastern District of Missouri reached the
opposite conclusion. In *Lewey v. Vi-Jon, Inc.*, 2012 WL 1859031 (E.D. Mo.), the
plaintiff sought punitive damages for retaliation in violation of the FLSA. In a motion to
strike, the defendant asserted that punitive damages are not available in an FLSA
retaliation action. The district court rejected the reasoning in *Tucker*, and adopted the
Seventh Circuit's holding in *Travis*. *Id.* at *7 ("The Court agrees with those courts that
have found that the FLSA anti-retaliation provision remedy of 'legal relief' encompasses
punitive damages.").[4]

In *Fiedler*, the Eighth Circuit concluded that compensation for pain and suffering
is not recoverable in ADEA actions. 670 F.2d at 809. In reaching that conclusion, the
Court construed narrowly the remedies language found in the ADEA.

> Section 216(b) has never been interpreted to allow damage
> awards beyond those specifically enumerated in the statute.

---

[4] In their reply brief, Defendants cite additional district court cases in support of
their position. Many of the cases, however, are not directly on point. For example, in
*Daniels v. Pioneer Cent. School Dist.*, 2012 WL 70573 (W.D.N.Y.), the Court dismissed
the plaintiff's second cause of action — alleging retaliation in violation of the ADEA —
as lacking in a factual basis. The Court *then* dismissed that part of the plaintiff's complaint
seeking punitive damages, noting that punitive damages are not available under the ADEA.
In *McQuilkin v. Delaware River Port Authority*, 2011 WL 5325620 (D.N.J.), the plaintiff
"concede[d] that he is not entitled to a recovery for emotional distress or punitive
damages," seeking instead liquidated damages authorized by the statute. *Id.* at *3.
Defendants also note, interestingly, that an Illinois district court recently failed to
follow the holding by the Seventh Circuit in *Moskowitz* and *Travis*. In *Smith v. Illinois
Ass'n of School Boards*, 2010 WL 4293088 (S.D. Ill.), the plaintiff brought an action for
discrimination and retaliation in violation of the ADEA. The defendant argued that the
plaintiff was not entitled to punitive damages for his retaliation claim. Without making any
reference to *Moskowitz* or *Travis*, the district court agreed and dismissed the plaintiff's
claim for punitive damages. *Id.* at *3.

> Thus, damages for pain and suffering have never been awarded under the FLSA. Except for slight modifications that are not applicable here, Congress intended to incorporate fully the remedies and procedures of the FLSA. Since Congress is presumed to be aware that this provision had never allowed damages for pain and suffering, it is reasonable to say that it did not intend for such damages to be allowed under section 626(b).

*Fiedler*, 670 F.2d at 810 (internal citations omitted).

When finally called upon to address this issue, the Court believes the Eighth Circuit Court of Appeals will adopt the reasoning in *Snapp*, and extend its previous holdings regarding available damages under the ADEA to include *both* discrimination claims and retaliation claims. That is, the Court concludes that emotional distress damages and punitive damages are not recoverable under the ADEA, whether the claim is one of discrimination or retaliation. Accordingly, Defendants' motion to dismiss Sellers' claims for emotional distress and punitive damages in Counts I and III will be granted.

### C.  Does Sellers' Defamation Claim State a Cause of Action?

Next, Defendants assert that Sellers' defamation claim (Count VII) fails to satisfy the pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Sellers resists, and asserts that the amended complaint gives Defendants reasonable notice of sufficient facts to support his claim for defamation. Alternatively, Sellers asks that he again be permitted to amend his complaint.

A pleading that states a claim for relief must contain "a short and plain statement of the claim" showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). It does not require detailed factual allegations, but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers "labels and conclusions" or "'naked assertions' devoid of 'further factual enhancement'" will not do. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

In addition, to survive a motion to dismiss, a complaint must contain sufficient factual matter to show relief is "plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). Conclusory statements alone "do not suffice." *Id.*; *see also United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (discussing facts necessary in a complaint to survive a motion to dismiss). While on a motion to dismiss the court must accept as true the complainant's factual allegations and construe the complaint in the light most favorable to the complainant, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Sellers is correct that he is "not required to *prove* [his] case at this stage in the litigation."[5] He must state, however, some facts about what allegedly took place to give rise to his cause of action. Here, Sellers failed to identify in his complaint any *facts* that suggest Defendants have engaged in defamation. In his resistance, Sellers asserts that he "recites specific and detailed facts throughout the Complaint that would allow a court to make the reasonable inference that defamatory statements were published."[6] Having reviewed Sellers' complaint, the Court finds no facts in the complaint upon which it may draw a "reasonable inference" that Defendants engaged in defamation. The complaint fails to identify what was allegedly said, who said it, who heard it, and whether it concerned or involved Sellers in any way. *See Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996) (providing the prima facie case necessary in a defamation action). While Sellers

_____

[5] Seller's Resistance to Defendant's Motion to Dismiss (docket number 22-1) at 4 (emphasis added).

[6] *Id.* at 3. Later, in his resistance, Sellers again argues that "[t]he facts included in [his] Complaint clearly allow for the court to draw a reasonable inference that the Defendant is liable for the misconduct alleged." *Id.* at 4.

need not "prove" anything, including whether such allegations are true, he must provide the Court with a factual basis for his cause of action. *Iqbal*, 556 U.S. at 678 (labels, conclusions, or naked assertions devoid of any factual entrancement will not do). Here, Sellers merely recited the legal elements of a defamation claim. This will not do. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, the Court finds that Defendants' motion to dismiss Count VII should be granted.

Sellers' request for leave to amend his Complaint is also denied. Local Rule 15 requires a party moving pursuant to FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2) or (d) to "describe in the motion the changes sought, and must electronically attach to the motion and file under the same docket entry the proposed amended or supplemented pleading." Because Sellers has failed to comply with Local Rule 15, his request for leave to amend the complaint is denied.

### D. Is Sellers' Negligence Claim Preempted by the ICRA or Otherwise Barred by the Statute of Limitations?

Defendants assert Sellers' negligence claim (Count VIII) fails as a matter of law because it is preempted by the Iowa Civil Rights Act ("ICRA"). Alternatively, Defendants assert the claim is barred by the statute of limitations. Sellers does not resist the dismissal of his negligence claim. Accordingly, Count VIII will be dismissed.

### E. Can Sellers Recover Damages which Predated Enactment of Iowa Code Section 216.6A?

In Count VI of his amended complaint, Sellers asserts Defendants failed to compensate him at a rate equal to his "younger counterparts," in violation of Iowa Code section 216.6A. Defendants argue that section 216.6A, which was enacted on April 28, 2009, cannot be applied retroactively, and Sellers cannot recover damages for any alleged violations prior to its enactment. Sellers argues the Statute is remedial, and may be applied retroactively.

Under Iowa law, "[l]egislative intent determines if a court will apply a statute retrospectively or prospectively." *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State, University of Iowa*, 763 N.W.2d 250, 266 (Iowa 2009) (citing *Emmet County State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989)). "Generally, a newly enacted statute is presumed to apply prospectively, unless expressly made retrospective." *Id.* (citing *City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 249 (Iowa 2008)); *see also State Public Defender v. Iowa District Court*, 629 N.W.2d 82, 84 (Iowa 2001) ("Legislative enactments normally operate prospectively to only affect matters occurring after the effective date of the statute."); Iowa Code § 4.5 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). However, "when the statute relates solely to remedy or procedure, a court can apply the statute both prospectively and retrospectively." *Phi Delta Theta Fraternity*, 763 N.W.2d at 266 (citation omitted); *see also Hannan v. State*, 732 N.W.2d 45, 51 (Iowa 2007) ("While most statutes are presumed to be prospective in application, remedial or procedural statutes may be applied retroactively."). On the other hand, "[a] statute that relates to a substantive right is ordinarily applied prospectively." *Phi Delta Theta Fraternity*, 763 N.W.2d at 266 (citing *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 491 (Iowa 1985)).

In *Board of Trustees of Municipal Fire & Police Retirement Systems of Iowa v. City of West Des Moines*, 587 N.W.2d 227 (Iowa 1998), the Iowa Supreme Court discussed the differences between remedial and substantive rights:

> A remedial statute affords a private remedy to a person injured by a wrongful act, corrects an existing law or redresses an existing grievance, gives a party a mode of remedy for a wrong where none or a different remedy existed, or remedies defects in the common law and in civil jurisprudence generally. Substantive law creates, defines, and regulates rights, while procedural law governs the practice, method, procedure, or legal machinery by which the substantive law is enforced or made effective.

*Id.* at 231 (citations omitted). If a statute is remedial, retrospective operation is presumed, but courts must "employ a three-part test to determine if retroactive application is consistent with legislative intent." *Anderson Financial Services, LLC v. Miller*, 769 N.W.2d 575, 579 (Iowa 2009) (citations omitted). The three-part test requires a court to: 1) examine the language of the legislation; 2) consider the evil the statute seeks to remedy; and 3) determine whether there was an existing statute governing or limiting the evil that the new statute intends to remedy. *Id.* (citations omitted); *see also Board of Trustees*, 587 N.W.2d at 231 (discussing three-part test).

In arguing that Code section 216.6A is remedial, Sellers asserts:

> Iowa Code section 216.6A is a remedial statute in that it provides a private remedy by correcting and/or redressing an existing grievance as provided in Iowa Code section 216.6 and Chapter 216 which prohibits discrimination against an individual on the basis of age. Section 216.6A simply defines more specifically a form of discrimination previously protected, defining already unlawful discrimination to specifically include wage discrimination and the remedies therewith; it does not create a new substantive law.

Sellers' Resistance to Defendant's Motion to Dismiss (docket number 22-1) at 5.

In their reply, Defendants assert:

> Because Section 216.6A created, defined, and regulated a new right, an Iowa employee's right to be free from discriminatory pay practices, it is substantive. . . . Indeed, prior to the enactment of this statute, this right to be free of discriminatory pay practices did not exist under Iowa law. Neither the statutory text nor legislative history of Sections 216.6A or 216.15(9) "corrected" or "redressed" relief previously available to employees under the Iowa Civil Rights Act. Because Iowa's equal pay law is substantive, it is entitled to a presumption of prospective-only application.

Defendants' Corrected Reply Brief in Further Support of Their Motion to Dismiss (docket number 31) at 3.

Turning to the statute, Iowa Code § 216.6A(1)(a) explains that the Iowa legislature enacted the new statutory provision because it found wage discrimination on the basis of age, among other things, to be against public policy because it discriminates against individuals, negatively impacts the general workforce, and adversely affects the general welfare of the state. *See* § 216.6A(1)(a)(1)-(7) (enumerating public policy reasons for the new statutory provision). Section 216.6A(1)(b) provides that it will be the policy of the state "to correct and, as rapidly as possible, to eliminate" such discrimination. *Id.* Section 216.6A(2)(a) provides the substantive legal framework for the statutory provision:

> It shall be an unfair or discriminatory practice for any employer or agent of any employer to discriminate against any employee because of the age . . . of such employee by paying wages to such employee at a rate less than the rate paid to other employees who are employed within the same establishment for equal work on jobs, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

*Id.*

In examining the legislative language, the Court finds that Iowa Code section 216.6A is substantive law, and not remedial. While Code section 216.6A falls under the umbrella of Iowa's civil rights laws which prohibit discrimination on the basis of age, the statute created, defined, and regulated a new right, the right to be free from wage discrimination on the basis of age. § 216.6A(2)(a). *See Board of Trustees*, 587 N.W.2d at 231 ("Substantive law creates, defines, and regulates rights."). The statute was specifically enacted on public policy grounds to address wage discrimination in the workplace. *See* § 216.6A(1)(a)-(b). Furthermore, section 216.6A does not "correct" or "redress" any relief previously available to employees under Iowa's civil rights laws. *See Board of Trustees*, 587 N.W.2d at 231 ("A remedial statute . . . corrects an existing law or redresses an existing grievance[.] . . ."). Moreover, there is no language in section 216.6A which expressly states or implies that the legislature intended the statute to be applied retroactively. Therefore, because section 216.6A is substantive law and does not

expressly state that it applies retroactively, the Court concludes that the statute should only be applied prospectively, and not retrospectively. *See Phi Delta Theta Fraternity*, 763 N.W.2d at 266 (providing that "[g]enerally, a newly enacted statute is presumed to apply prospectively, unless expressly made retrospective" and "[a] statute that relates to a substantive right is ordinarily applied prospectively"). *See also State Public Defender*, 629 N.W.2d at 84 ("Legislative enactments normally operate prospectively to only affect matters occurring after the effective date of the statute."); Iowa Code § 4.5 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). Accordingly, Defendants' motion to dismiss Sellers' claim in Count VI to the extent it alleges liability for wage discrimination prior to the enactment of Iowa Code section 216.6A (April 28, 2009) will be granted.

## V. SUMMARY

The Court concludes that D'Cruz should be dismissed from the claims brought by Sellers in Counts I, II, and III. The Court further determines that Sellers is not entitled to emotional distress or punitive damages in Count I or III of his complaint. The Court also finds that Sellers' defamation claim (Count VII) and negligence claim (Count VIII) should be dismissed. Finally, the Court concludes that Defendants' motion to dismiss Sellers' claim in Count VI to the extent it alleges liability for wage discrimination prior to the enactment of Iowa Code section 216.6A should be granted.

## VI. ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (docket number 20) is **GRANTED** as follows:

1.      That part of Counts I, II, and III in Plaintiff's amended complaint which asserts a claim against Defendant Clyde D'Cruz, individually, is **DISMISSED**. Counts I, II, and III will proceed against Defendant Deere, only.

2.      Plaintiff's claims of emotional distress and punitive damages in Counts I and III are **DISMISSED**. Plaintiff may pursue compensatory damages, only.

15

3.    Plaintiff's claim for defamation (Count VII) is **DISMISSED**.

4.    Plaintiff's negligence claim (Count VIII) is **DISMISSED**.

5.    Plaintiff's claim for wage discrimination (Count VI) prior to April 28, 2009

is **DISMISSED**.  Plaintiff may assert a claim for wage discrimination which occurred on

or after April 28, 2009.

DATED this ___14___ day of February, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA