**INTERROGATORY NO. 8:** Describe the efforts that Plaintiff has taken, if any, or is undertaking, to obtain other employment (including a different position with the same employer) since December 2000. For the purpose of this interrogatory, the term "describe" means:

  a. the name and address of each person, business, or other entity with whom Plaintiff has sought employment;

  b. the date Plaintiff has attempted to obtain employment with each person, business, or other entity;

  c. the specific position for which Plaintiff has sought employment with each person, business, or other entity;

  d. whether Plaintiff filed a written application with each person, business, or other entity;

  e. the person to whom Plaintiff submitted each verbal, electronic, or written application;

  f. whether Plaintiff was offered an interview, participated in an interview, or was offered employment by each person, business, or other entity;

  g. the compensation and fringe benefits associated with each prospective job described in (c);

  h. all job offers made to Plaintiff; and

  i. all job offers rejected by Plaintiff.

**ANSWER:**

From 2000 to 2004, Plaintiff was employed at John Deere on a full time basis in supply management and did not apply for any other positions during this period of time outside of John Deere. Plaintiff did apply for three positions in different departments of within John Deere during this period of time. These applications are in the possession of Defendants. Plaintiff did not receive any job offers, but did participate in an interview with Doug Hemasath. Any compensation or benefits associated with these positions would be available to Defendants within any Human Resources records.

Plaintiff went on a leave of absence in March of 2005 and has been unable to return to work anywhere since then due to his mental disability as a result of the discrimination alleged herein. His medical providers have opined he is totally and permanently disabled. He has not applied for work outside of his employment at John Deere since his medical leave began as a result of this.

11

APP599

**INTERROGATORY NO. 17**: Identify every source of income to Plaintiff since December 2000, and for each source of income identified, including unemployment compensation, state the amount received, the reason for payment (e.g., wages, social security, etc.), and the date of the payment; identify the company or individual who made the payment (including name, address and phone number); and identify all documents that refer or relate to the source of income.

**ANSWER:**

From December 2000 until March of 2005, Plaintiff received salary for his employment at John Deere. You should have these amounts. Plaintiff estimates that from December 2000 to approximately March of 2005, he was averaging somewhere from $60,000 to $65,000 a year.

Once Plaintiff stopped working at Deere in March of 2005, Plaintiff was on salary continuance for approximately one year.

After that, Plaintiff went on long term disability and has been on that ever since. He receives approximately $12,000 a year on long term disability.

He is also on Social Security Disability and receives approximately another $25,000 to $26,000 a year on that.

Of course, as stated previously, he received a settlement from his workers' compensation claim, and you are well aware of what the amount of that was.

23

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL JOSEPH SELLERS,<br><br>     Plaintiff,<br><br>v.<br><br>DEERE & COMPANY a/k/a JOHN DEERE COMPANY and CLYDE D'CRUZ,<br><br>     Defendants. | Case no. 6:12-cv-02050-JSS<br><br><br>**PLAINTIFF MICHAEL SELLERS'S ANSWERS TO DEFENDANTS' SECOND SET OF INTERROGATORIES** |

COMES NOW, Plaintiff Michael Joseph Sellers, and for his Answers to Defendant's Interrogatories states the following:

HOPKINS & HUEBNER, P.C.

By_____
Gregory T. Racette      AT0006447
2700 Grand Avenue, Suite 111
Des Moines, IA 50312
Telephone: (515) 244-0111
Facsimile: (515) 697-4299
Email: gracette@hhlawpc.com

ATTORNEY FOR PLAINTIFF

Original to:

Frank Harty  AT0003356
Angel A. West  AT0008416
Debra L. Hulett  AT0003665
Frances M. Haas  AT0009838
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Telephone:  (515) 283-3100
Facsimile:  (515) 283-3108
Email: fharty@nyemaster.com
Email: aaw@nyemaster.com
Email: dlhulett@nyemaster.com
Email: fmhaas@nyemaster.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon each of the attorneys of record of all parties to the above-entitled cause herein at their respective addresses disclosed on the pleadings of record on the ___3___ day of _December_, 20_13_

By:  ☒ U.S. Mail          ☐ FAX
     ☐ Hand Delivered     ☐ Overnight Courier
     ☐ Federal Express    ☐ Other: _____

Signature: _Jannee Vaudry_

**INTERROGATORY NO. 22:** In your pleading, you contend that Defendants have subjected you to adverse employment action. With particularity, describe each adverse employment action by Defendants that you contend was motivated by your age, including the following information:

 (a) Describe each action you believe occurred;

 (b) Provide the date that you believe each action occurred;

 (c) Identify by name each person that you believe has knowledge regarding each action;

 (d) State the person or persons you contend made the decision regarding the action; and

 (e) Explain why you believe the action was motivated by your age.

**ANSWER:** Plaintiff asserts he was subjected to adverse employment actions motivated by age, including but not limited to, the following events:

1. Plaintiff was constantly harassed, belittled, intimidated, and demeaned by Clyde D'Cruz. Plaintiff describes each of these instances in his deposition. By doing so, D'Cruz created an environment that would force Plaintiff out as an older employee and discredit his work sufficiently to other managers in order to set him up for failure. This treatment was not occurring with younger employees. Plaintiff witnessed similarly harassing and discriminatory conduct toward older employees but did not see the same occur with young employees. In particular, a younger employee that Plaintiff was supervising was not held responsible for his work related to the audits and was eventually upgraded two levels while Plaintiff was given a "does not meets" in his performance evaluation and kept at the same grade level.
2. Plaintiff was intentionally placed in new job assignments, as well as changing job expectations and duties in order to set him up to fail at his job. This same treatment was not occurring with younger employees as Plaintiff witnessed.
3. Plaintiff was constantly experiencing additions to his workload that were unmanageable and unreasonable. Managers Clyde D'Cruz and Daria Jerauld expected him to meet his delineated job responsibilities plus all the additions in a timely manner. Again, this was setting Plaintiff up to fail, justify a poor performance evaluation and push him out as an older employee. He was also not compensated for the additional work he was doing. This same treatment was not occurring with younger employees.
4. Given poor performance evaluation that was unjustified, inaccurate, and designed to justify grading of Plaintiff. This occurred to other older employees as well by Clyde D'Cruz but not to younger employees.

3

5. Plaintiff was described as lying to the auditors on an internal audit that was being performed in Supply Management. Again, this accusation was false, inaccurate, and designed to discredit Plaintiff and set him up for poor performance evaluation. This did not occur to a younger employee, David Christy, who also performed work on same audit.
6. Plaintiff was unjustifiably stripped of supervisory responsibilities and demoted based in part on this action.
7. Plaintiff was mapped to the improper position under GJE process; a position that did not reflect his actual work content and prevented his being properly graded, whereas a younger employee, Christy, working under Plaintiff with less responsibilities received a double level upgrade.
8. Plaintiff was denied job opportunities for which he was qualified because Daria Jerauld and Clyde D'Cruz would not allow him to transfer and spoke poorly about his work inaccurately to other managers.

In addition, these actions were motivated by age based on the results of the WWCA internal audits, dated July 2003 and 2004, revealing the severe disparities in age of the employees within Clyde D'Cruz's department; corroborating the notion that D'Cruz was attempting to move older employees out of his department and placing younger employees, who lacked the training, knowledge or experience, into positions of more responsibility and power than the older employees. Furthermore, Kevin Keith's email message to Clyde D'Cruz discussing "Mel" in response to Mr. D'Cruz's clearly disparaging and discriminatory comments based on Mel's age further support D'Cruz's scheme to discriminate against older employees, such as he did against Plaintiff.

Plaintiff refers you to his deposition testimony, other pertinent deposition testimony, Initial Disclosures, previous answers to Interrogatories, and documents produced per request of Defendants for additional details related to the aforementioned adverse employment events and to any other events suffered by Plaintiff contained in those documents.

Plaintiff was diagnosed as suffering from PTSD as a result of this discrimination, harassment and retaliation. Plaintiff refers you to his medical records, as well as the deposition testimony of Dr. Piburn and Dr. Harding.

4

**INTERROGATORY NO. 23:** In your pleading, you contend that Defendants have subjected you to adverse employment action. With particularity, describe each adverse employment action by Defendants that you contend was motivated by your disability, including the following information:

> (f) Describe each action you believe occurred;
>
> (g) Provide the date that you believe each action occurred;
>
> (h) Identify by name each person that you believe has knowledge regarding each action;
>
> (i) State the person or persons you contend made the decision regarding the action; and
>
> (j) Explain why you believe the action was motivated by your age.

**ANSWER:** Plaintiff asserts he was subjected to adverse employment actions motivated by disability, including but not limited to, the following events:

1. Plaintiff was told by Daria Jerauld he was not allowed to use conference rooms despite this being a reasonable accommodation for Plaintiff's disability. He was told this on two occasions by Ms. Jerauld.
2. Plaintiff requested Daria Jerauld and Clyde D'Cruz provide goals and revisions of responsibilities in writing (e-mails) to accommodate his short term memory issues but this accommodation was refused to him.
3. Plaintiff was denied job opportunities he was qualified for due to his disability.

Plaintiff refers you to his deposition testimony, other pertinent deposition testimony, Initial Disclosures, previous answers to Interrogatories, and documents produced per request of Defendants for additional details related to the aforementioned adverse employment events and to any other events suffered by Plaintiff contained in those documents.

Plaintiff was diagnosed as suffering from PTSD as a result of this discrimination, harassment and retaliation. Plaintiff refers you to his medical records, as well as the deposition testimony of Dr. Piburn and Dr. Harding.

Case 6:12-cv-02050-JSS   Document 84-7   Filed 02/03/14   Page 7 of 85

APP605

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL JOSEPH SELLERS,<br><br>     Plaintiff,<br><br>v.<br><br>DEERE & COMPANY a/k/a JOHN DEERE COMPANY, CLYDE D'CRUZ, individual,<br><br>     Defendants. | Case no. 6:12-cv-02050-JSS<br><br><br>**PLAINTIFF'S ANSWER TO DEFENDANT'S FIRST REQUEST FOR ADMISSION DIRECTED TO PLAINTIFF MICHAEL SELLERS** |

COMES NOW the above-named Plaintiff in response to Defendant's first request for admissions as follows:

**Request No.1**: Exhibit A, January 9, 2006 email.

Admit ___X___               Deny_____

**Request No.2**: Exhibit B, March 26,2012 email from Senator Harkin to Michael Sellers regarding the Protecting Older Workers Against Discrimination Act.

Admit ___X___               Deny_____

**Request No.3**: Exhibit C, Michael Sellers letter to EEOC investigator regarding "written request for a substantial weight review."

Admit ___X___               Deny_____

**Request No.4**: Exhibit D, handwritten notes by Michael Sellers on U.S. Eighth Circuit Court of Appeals ruling in Montgomery v. John Deere & Company, No. 98-1628.

Admit ___X___               Deny_____

**Request No.5**: Exhibit E, January 9, 2007 email from Michael Sellers to Shannon Lemke.

Admit ___X___               Deny_____

**Request No.22:** Exhibit F, document prepared by Michael Sellers with title "Mike's thoughts on Daria's Deposition and WHY he thinks it is perjury."

Admit ___X___          Deny_____

Respectfully Submitted

_Gregory T. Racette_ (signature)

_____

Gregory T. Racette
Amy Pellegrin
HOPKINS & HUEBNER, P.C.
2700 Grand Avenue, Suite 111
Des Moines, Iowa 50312
Telephone: 515-244-0111
Facsimile: 515-697-4299
Email: gracette@hhlawpc.com
ATTORNEYS FOR PLAINTIFF

### Certificate of service

The undersigned certifies that a true copy of the foregoing document was served upon one of the attorneys of record for each party to the above-entitled cause at the address shown below on January 16, 2014:

Frank Harty  AT0003356
Angel A. West  AT0008416
Debra L. Hulett  AT0003665
Frances M. Haas  AT0009838
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Telephone: (515) 283-3100
Facsimile: (515) 283-3108
Email: fharty@nyemaster.com
Email: aaw@nyemaster.com
Email: dlhulett@nyemaster.com
Email: fmhaas@nyemaster.com
ATTORNEYS FOR DEFENDANTS

## Zimbra

glelaf@mchsi.com

---

## Recent EEOC feedback

---

From :  MJSellers@aol.com

Mon, Jan 09, 2006 02:14 PM

Subject : Recent EEOC feedba...

To :  ...elan@mchsi.com, GaLeni3@aol.com, twoltime@netins.net, tlc1234@juno.com, sharpe@cedarnet.org, drebouche@direcway.com, Hamjer@cfu.net, ToddTibbetts@hotmail.com, MJSellers@aol.com, shrikhandekar@yahoo.com, ofewumi@yahoo.com

**Here's a recent reply I got from Shannon**

Hi Mike.

Sorry I haven't gotten back to you sooner. I will be sending a letter out to each of you indicating when I will be back in Waterloo. I plan on having another group meeting with all of you while I'm in town. I noticed there is a lot of miscommunication going on i.e. my trip to headquarters. So the purpose of the meeting is to get things straight and let you all know where we are in the investigation.

If you have any other questions, just let me know.

By the way, I have received all the information you have sent. I will be addressing some of those issues on my next trip.

Thanks.
Shannon M. Lemke
Federal Investigator
EEOC

>>> <MJSellers@aol.com> 1/5/2006 12:10:26 PM >>>
**Hi Shannon.**

**Any news which can be shared?**

Mike Sellers

---

**EXHIBIT A - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

EEOC Charge Number : 26-2005-04322
Respondent: John Deere Waterloo Works

Shannon M. Lemke
Investigator
U.S. E.E.O.C. - Milwaulkee District Office

**Subject:** **Written Request for a Substantial Weight Review - Section 1601.76 of EEOC Regulations**

Dear Shannon:

I received your copies of the formal E.E.O.C. charges related to my Age and Disability Discrimination.
This was received on Wednesday, April 20th and was mailed back to you on Friday, April 22nd. Sorry for the delay, but just the receipt of this material gave me an anxiety attack as I recalled past and recent action at John Deere. **THANK YOU AGAIN,** for your help. Given my current medical condition (post traumic stress), it would have been virtually impossible for me to defend myself against this discrimination.

**This letter is being sent to formally communicate my request for a Substantial Weight Review, per section 1601.76 of the E.E.O.C.'s regulations.** I do not have any confidence that the Iowa Civil Rights Commission will adequately address the problem within Deere, and the corresponding assessment - due to John Deere's influence within the state of Iowa. (i.e. Iowa's largest employer)

If the Iowa Civil Rights Commission processes my charge, this is my "proactive" request (i.e. Hasn't happened yet) for you to formally and thoroughly review the agency's finding.

This request is being returned with my signed copies of the formal charges which were sent to me for review. I needed to change one reference to a 2004 activity to a 2003 activity. I therefore initialed this change on each copy provided to me.

Thanks again for your assistance. It is "GREATLY" appreciated.

Sincerely,

*Michael J. Sellers*

Michael J. Sellers

**EXHIBIT C - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

From:           <MJSellers@aol.com>
To:             <Shannon.lemke@eeoc.gov>
Date:           1/9/2007 7:47:11 AM
Subject:        Re: Claim number 260-2005-04322 Deere

Hi Shannon,

I am quickly approaching the end of my statute of limitations period
(01Mar07)  Would it be possible for me to meet with you and/or the  attorney
involved to discuss my "individual" case?  (I may pursue personal  injury)

Mike Sellers
Waterloo, IA

**EXHIBIT E - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL JOSEPH SELLERS, <br><br> Plaintiff, <br><br> v. <br><br> DEERE & COMPANY a/k/a JOHN DEERE COMPANY, CLYDE D'CRUZ, individual, <br><br> Defendants. | Case no. 6:12-cv-02050-JSS <br><br><br> **PLAINTIFF'S ANSWER TO DEFENDANT'S SECOND REQUEST FOR ADMISSION DIRECTED TO PLAINTIFF MICHAEL SELLERS** |

COMES NOW the above-named Plaintiff in response to Defendant's second request for admissions as follows:

<u>Request No. 7</u>: Exhibit G, December 4, 2009 document completed by Michael Sellers titled, "Social Security Administration Statement of Claimant or other person."

Admit ___X___          Deny_____

<u>Request No. 8</u>: Exhibit H, December 24, 2008 Report of Continuing Disability Interview.

Admit ___X___          Deny_____

<u>Request No. 9</u>: Exhibit I, June 4, 2008 document created by Michael Sellers titled, "Cost Benefit Analysis."

Admit ___X___          Deny_____

<u>Request No. 10</u>: Exhibit J, document completed by Michael Sellers titled "Gambling Treatment Program, My plan for problem gambling."

Admit ___X___          Deny_____

**Request No. 11**: Exhibit K, January 31, 2009 document completed by Michael Sellers titled, "Function Report Adult".

Admit ___X___                    Deny_____

**Request No.12**: Exhibit L, document completed by Michael Sellers with title "Personal Pain/Fatigue Questionnaire."

Admit ___X___                    Deny_____

**Request No.13**: Exhibit M, document completed by Michael Sellers with title "Chest Pain Questionnaire".

Admit ___X___                    Deny_____


Respectfully Submitted,

_Gregory T. Racette_

Gregory T. Racette
Amy Pellegrin
HOPKINS & HUEBNER, P.C.
2700 Grand Avenue, Suite 111
Des Moines, Iowa 50312
Telephone: 515-244-0111
Facsimile: 515-697-4299
Email: gracette@hhlawpc.com
ATTORNEYS FOR PLAINTIFF

· SOCIAL SECURITY ADMINISTRATION     Form Approved OMB No. 0960-0072

| CONTINUING DISABILITY REVIEW REPORT | For SSA Use Only Do not write in this box. |
|---|---|
| SSA will use this form to review your illnesses, injuries, or conditions since the date of your last medical disability decision. | Date of your last medical disability decision: |

| Related SSN | | Number Holder | **MICHAEL SELLERS** |
|---|---|---|---|

| Type(s) of Case(s): | Title II | ☐ DIB | ☐ DWB | ☐ CDB | ☐ FZ | ☐ ESRD | ☐ HIB |
|---|---|---|---|---|---|---|---|
| (Check all that apply.) | Title XVI | ☐ DI | ☐ DS | ☐ DC | ☐ BI | ☐ BS | ☐ BC |

**If you are currently participating in the Ticket to Work Program or working under a plan with a private or State Vocational Rehabilitation Agency, contact the Social Security Administration before completing this form.**

## SECTION 1 - INFORMATION ABOUT THE DISABLED PERSON

**1.A.** NAME (first, middle, last)
JOSEPH
**MICHAEL SELLERS**

**1.B.** SOCIAL SECURITY NUMBER

**1.C.** DAYTIME PHONE NUMBER (If you do not have a phone where we can reach you, give us a daytime phone number where we can leave a message.)
☒ Your number
☒ Message number
☐ None
(area code)   (phone number)

**1.D.** E-MAIL ADDRESS (optional)
No longer able to keep our computers connected to internet - disabled by changes or viruses.

**1.E.** Give us the name of a friend or relative (other than your doctors) that we can contact who knows about your illnesses, injuries, or conditions, and can help you with your case.

NAME
LYNN MARIE SELLERS

RELATIONSHIP
WIFE

ADDRESS (number, street, apt., PO Box, rural route)

DAYTIME PHONE NUMBER (St. Athenasius school)
(area code)   (phone number)

CITY   WATERLOO    STATE   IOWA    ZIP   50701

**1.F.** Can you speak and understand English?    ☒ YES    ☐ NO

If "no," what is your preferred language? _____ NOT APPLICABLE
NOTE: If you cannot speak and understand English, we will provide an interpreter, free of charge.

If you cannot speak and understand English, is there someone we may contact who speaks and understands English and will give you messages?    ☐ YES    ☐ NO NOT APPLICABLE

(If "yes," and this is the same person as in "1.E." above, write "SAME" below. If "yes," but this is a different person, complete the information below.)

NAME (NOT APPLICABLE)

RELATIONSHIP (NOT APPLICABLE)

ADDRESS (number, street, apt., PO Box, rural route) (NOT APPLICABLE)

DAYTIME PHONE NUMBER (NOT APPLICABLE)
(area code)   (phone number)

CITY (NOT STATE APPLICABLE) ZIP

**1.G.** If you are age 18 or older, can you read and understand English?
☒ YES    ☐ NO

**1.H.** If you are age 18 or older, can you write more than your name in English?
☒ YES    ☐ NO

**1.I.** What is your height without shoes?
5 Feet 9 inches

**1.J.** What is your weight without shoes?
175 Lbs.

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 1

## SECTION 2 – INFORMATION ABOUT YOUR ILLNESSES, INJURIES, OR CONDITIONS

**2.A.** **If you are an adult (age 18 or older),** what are the disabling illnesses, injuries, or conditions that limit your ability to work? **If you are a child (under age 18),** what are the disabling illnesses, injuries, or conditions that limit your ability to do the same things as other children of the same age?

1.) Difficulty in understanding new or unfamiliar topics

2.) Significant reduction of mental functioning/processing in stressful situations

3.) Difficulty in working towards deadlines and due dates (Triggers Post Traumatic Stress Disorder and panic attacks)

4.) PTSD is related to business conditions, so there are a number of situations which now cause panic attacks, (overload situations, lack of control, evaluations, lack of trust-especially with supervisors/MGRs)

5.) Great Difficulty in "multi-tasking" (Needs to do one thing at a time)

6.) Difficulty in processing normal communications when multiple people or comments are involved. 7.) Can't maintain high level of mental processing. (Gets tired/burned out)

**2.B.** Has there been a change (for better or worse) in your illnesses, injuries, or conditions listed in SECTION 2.A., **since the date of your last medical disability decision** (see date on top right side of Page 1)?

☑ YES (Describe specific changes below and give dates when these changes started.)   ↳ No Date listed (Assuming early Apr '05)

☐ NO

Summary: They have gotten worse overall

Examples : 1.) Quickly reached max. dosage on Lamictal, to assist with Zoloft for Depression (already at max. dosage. (June 06)
(Dates Estimated)
2.) Put on Hydroxyzine for Anxiety/Panic Attacks (June 06)
3.) Put on Toprol to alleviate constant chest pain, after going into Emergency room in early 2006 (June 06)
4.) Cholesterol, Triglycerides, TSH, LDL, levels were found to be high. (Aug 2006)

If you need more space, use SECTION 10 – REMARKS.

## SECTION 3 – INFORMATION ABOUT YOUR MEDICAL RECORDS

**3.A.** **Within the last 12 months,** have you seen a doctor/hospital/clinic or anyone else for your illnesses, injuries, or conditions?

☑ YES      ☐ NO

Do you have a **future appointment** scheduled with a doctor/hospital/clinic or anyone else for your illnesses, injuries, or conditions?

☑ YES      ☐ NO

**3.B.** **Within the last 12 months,** have you seen a doctor/hospital/clinic or anyone else for <u>emotional or mental problems</u>?

☑ YES      ☐ NO

Do you have a **future appointment** with a doctor/hospital/clinic or anyone else for <u>emotional or mental problems</u>?

☑ YES      ☐ NO

**If you answered "No" to <u>both</u> 3.A. and 3.B., do not complete the rest of SECTION 3; skip to SECTION 4.**

**APP614**

Case 6:12-cv-02050-JSS   Document 84-7   Filed 02/03/14   Page 16 of 85    Sellers

**EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

Social Security Disability 000012

## SECTION 3 – INFORMATION ABOUT YOUR MEDICAL RECORDS, continued

3.C. List other names, if any, that you have used on your medical records **within the last 12 months**.

CAN't remember any changes, other than beginning therapy
for gambling addition (outgrowth of anxiety and obsessive-
compulsive characteristics (Seeing Jewell Cooper, Gambling and
Addictions counselor, Allen Hospital, Logan Ave, 319-235-3550)

3.D. List each **DOCTOR/HMO/THERAPIST/OTHER PERSON** who has treated you **within the last 12 months**.
Also, provide this information for any future appointment(s).

| 1. NAME James (Jim) H. Harding, licensed chief clinical psychologist | | | DATES |
|---|---|---|---|
| ADDRESS Black HAWK - GRUNDY Mental Health Center, Inc. 3251 West Ninth Street | | | First Visit (within last 12 months) 12/07/07 |
| CITY Waterloo | STATE Iowa | ZIP 50702 | Last Visit 10/29/08 |
| PHONE 319 234-2893 (area code) (phone number) | PATIENT ID# (if known) (NOT KNOWN) | | Next Appointment Dec/Jan 08 09 Just missed my appointment or Dec 08 appointment |
| Reasons for visits Ongoing therapy for PTSD (Post Traumatic Stress Disorder) | | What treatment was received? - Therapy - Some hypnosis (see Jim's records for better descriptions) | |

| 2. NAME Dr. M. Piburn Jr, Psychologist | | | DATES |
|---|---|---|---|
| ADDRESS Black Hawk-Grundy Mental Health Center, Inc. 3251 West Ninth Street | | | First Visit(within last 12 months) 12/03/07 |
| CITY Waterloo | STATE Iowa | ZIP 50702 | Last Visit 10/10/08 |
| PHONE 319 234-2893 (area code) (phone number) | PATIENT ID# (if known) (not KNOWN) | | Next Appointment 12/10/08 |
| Reasons for visits Medical Advice, Pharmaceutical treatment for PTSD, Anxiety, etc... | | What treatment was received? - Ongoing perscriptions, based on conditions/symptoms at the time. - medical guidance on conditions & interactions of medications, | |

APP615

Case 6:12-cv-02050-JSS Document 84-7 Filed 02/03/14 Page 17 of 85 Sellers

EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS

Social Security Disability 000013

## SECTION 3 – INFORMATION ABOUT YOUR MEDICAL RECORDS, continued

### DOCTOR/HMO/THERAPIST/OTHER

| 3. NAME Dr. Gregory L. Hoekstra, D.O. | DATES |
|---|---|
| ADDRESS John Deere Medical Group of Waterloo, P.C. 1015 South Hackett | First Visit (within last 12 months) 06/17/08 |

| CITY Waterloo | STATE Iowa | ZIP 50701 | Last Visit 07/01/08 |
|---|---|---|---|

| PHONE 319 274-1000 (Area Code) (Phone Number) | PATIENT ID# (if known) 1617628, I believe | Next Appointment Not sure |
|---|---|---|

| Reasons for visits | What treatment was received? |
|---|---|
| Treating normal heath issues (Flu, blood pressure, cholesterol problems, thyroid problem, Hyper lipidemia, etc..) | Various labs – Perscriptions to treat blood pressure, thyroid, etc... – health assessments – normal proactive/preventive Guidance. |

If you need more space, use SECTION 10 – REMARKS.

**3.E.** List each HOSPITAL/CLINIC where you received treatment **within the last 12 months**. Also, provide this information for any future appointment(s).

| 1. NAME Cedar Valley Medical Specialists | PHONE 319 833-5990 (area code) (phone number) |
|---|---|
| ADDRESS 1753 W. Ridgeway Ave, Suite 104 | PATIENT ID# (if known)(Not Known) | NEXT APPOINTMENT |

| CITY Waterloo | STATE Iowa | ZIP 50701 | What doctor(s) do you regularly see here? Srinivas Kalala, M.D. |
|---|---|---|---|

| TYPE OF VISIT | DATES(within last 12 months) | | REASON FOR VISIT(S) | TREATMENT RECEIVED |
|---|---|---|---|---|
| | Date In | Date Out | | |
| **Inpatient Stays** (stayed at least overnight) | | | | |
| | | | | |
| | | | | |
| | **First Visit** | **Last Visit** | REASON FOR VISIT(S) | TREATMENT RECEIVED |
| **Outpatient Visits** (sent home the same day) | 8/12/08 | 8/12/08 | Colonoscopy | Colonoscopy |
| **Emergency Room Visits** | Date(s) of Visit(s) | | REASON FOR VISIT(S) | TREATMENT RECEIVED |
| | | | | |
| | | | | |

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 4

**APP616**

**EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS** Sellers
Social Security Disability 000014

Not Needed

| SECTION 3 – INFORMATION ABOUT YOUR MEDICAL RECORDS, continued |
| --- |

### HOSPITAL/CLINIC

| 2. NAME | | PHONE | |
| --- | --- | --- | --- |
| | | (area code) (phone number) | |
| ADDRESS | | PATIENT ID# (if known) | NEXT APPOINTMENT |
| CITY     STATE     ZIP | | What doctor(s) do you regularly see here? | |

| TYPE OF VISIT | DATES(within last 12 months) | | REASON FOR VISIT(S) | TREATMENT RECEIVED |
| --- | --- | --- | --- | --- |
| | Date In | Date Out | | |
| Inpatient Stays (stayed at least overnight) | | | | |
| | | | | |
| | | | | |
| | First Visit | Last Visit | REASON FOR VISIT(S) | TREATMENT RECEIVED |
| Outpatient Visits (sent home the same day) | | | | |
| Emergency Room Visits | Date(s) of Visit(s) | | REASON FOR VISIT(S) | TREATMENT RECEIVED |
| | | | | |

| 3. NAME | | PHONE | |
| --- | --- | --- | --- |
| | | (Area Code) (Phone Number) | |
| ADDRESS | | PATIENT ID# (if known) | NEXT APPOINTMENT |
| CITY     STATE     ZIP | | What doctor(s) do you regularly see here? | |

| TYPE OF VISIT | DATES(within last 12 months) | | REASON FOR VISIT(S) | TREATMENT RECEIVED |
| --- | --- | --- | --- | --- |
| | Date In | Date Out | | |
| Inpatient Stays (stayed at least overnight) | | | | |
| | | | | |
| | | | | |
| | First Visit | Last Visit | REASON FOR VISIT(S) | TREATMENT RECEIVED |
| Outpatient Visits (sent home the same day) | | | | |
| Emergency Room Visits | Date(s) of Visit(s) | | REASON FOR VISIT(S) | TREATMENT RECEIVED |
| | | | | |

If you need more space, use SECTION 10 – REMARKS.

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 5

APP617
MICHAEL SELLERS   Sellers
EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS
Social Security Disability 000015

## SECTION 3 – INFORMATION ABOUT YOUR MEDICAL RECORDS, continued

**If you are under age 18, do not complete question 3.F. or SECTION 4; skip to SECTION 5 – TESTS.**

**3.F.** Does anyone else (for example, Workers' Compensation, insurance company, prisons, attorneys, or welfare agency) have medical records or information about your illnesses, injuries, or conditions **within the last 12 months**? Also, provide this information if you are scheduled to see anyone in the future.

☑ YES (Complete the following information.)      ☐ NO (Skip to SECTION 4.)

| NAME   JENNIFER CASEY DEERE DIRECT | DATES |
|---|---|
| ADDRESS   DISABILITY BENEFITS P.O. BOX 9109 | FIRST VISIT (within the last 12 months) Not Applicable |
| CITY   STATE   ZIP Moline IL. 61265-9109 | LAST VISIT Not Applicable |
| PHONE 1-888-432-3373, Option 7 (area code) (phone number) (Disability Benefits) | NEXT APPOINTMENT Not Applicable |
| CLAIM NUMBER (if any) | NAME OF CONTACT PERSON Jennifer Casey |

REASONS FOR VISITS   No visits involved.
She is the company representative (John Deere) for insurance/disability benefits.

*If you need more space, use SECTION 10 – REMARKS.*

## SECTION 4 – MEDICATIONS

Are you taking any medications for your illnesses, injuries, or conditions?
☑ YES (Complete the following information. Look at your medicine containers, if necessary.)
☐ NO (Skip to SECTION 5.)

| NAME OF MEDICINE | IF PRESCRIBED, GIVE NAME OF DOCTOR | REASON FOR MEDICINE | ANY SIDE EFFECTS YOU HAVE |
|---|---|---|---|
| SERTRALINE (2x100Mg) | DR. PIBURN | DEPRESSION | PLEASE REFER TO ATTACHED SUMMARIES |
| Lamotrigine (1x150 Mg) | DR. PIBURN | EXTREME MOOD SWINGS/Depression | OF EACH Prescription & Potential Side Effects |
| Hydroxyzine (4x50 mg) | DR. PIBURN | Anxiety | IF you need some |
| Metoprolol (1x25 Mg) | Dr. Hoekstra | CHEST PAIN Blood Pressure | Kind of medical |
| SYNTHROID (1x75 Mg) | DR Hoekstra | To treat thyroid condition | assessment, as to which apply to me, |
| Simvastatin (1x40 Mg) | Dr. Hoekstra | to lower cholesterol and triglycerides (Fats) in the blood | please contact DR Piburn. |

*If you need more space, use SECTION 10 – REMARKS.*

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 6

Case 6:12-cv-02050-JSS Document 84-7 Filed 02/08/14 Page 20 of 85   Sellers
Social Security Disability 000016

## SECTION 5 – TESTS

**Within the last 12 months,** have you had any of the following tests for your illnesses, injuries, or conditions? Also, provide this information if you are scheduled for tests in the future.

☑ YES (Complete the following information, give approximate dates, if necessary.)

☐ NO  (Skip to SECTION 6.)

| KIND OF TEST | WHEN WAS/ WILL TEST BE DONE? (month, day, year) | WHERE DONE? (name of facility) | WHO SENT YOU FOR THIS TEST? |
|---|---|---|---|
| EKG (HEART TEST) | NONE DONE | Not Applicable | Not Applicable |
| TREADMILL (EXERCISE TEST) | NONE DONE | Not Applicable | Not Applicable |
| CARDIAC CATHETERIZATION | NONE DONE | Not Applicable | Not Applicable |
| BIOPSY - Name of body part | NONE DONE | Not Applicable | Not Applicable |
| HEARING TEST | NOT SURE, could've been part of physical | Not Applicable | DR Hoekstra would know |
| SPEECH/LANGUAGE TEST | NONE DONE | Not Applicable | Not Applicable |
| VISION TEST | NONE DONE | Not Applicable | Not Applicable |
| IQ TESTING | NONE DONE | Not Applicable | Not Applicable |
| EEG (BRAIN WAVE TEST) | NONE DONE | Not Applicable | Not Applicable |
| HIV TEST | NONE DONE | Not Applicable | Not Applicable |
| BLOOD TEST (NOT HIV) | DEC 27, 2007 Jun 17, 2008 | John Deere Medical Grp 1015 South Hackett WATERLOO IA | DR Hoekstra |
| BREATHING TEST | NONE DONE | Not Applicable | Not Applicable |
| X-RAY - Name of body part  TEETH | Aug 4, 2008 | Kimball & Beecher, P.L.C 315 E. San Marnan Dr. | NORMAL CHECKUP |
| MRI/CT SCAN - Name of body part ECHO EXAM OF ABDOMEN | DEC. 11, 2007 | Allen Memorial Hospital Waterloo, Iowa | DR Hoekstra |

If you need more space, use SECTION 10 – REMARKS.

PHYSICAL          JUL 2008          JOHN DEERE Medical    DR Hoekstra
                                    GROUP
                                    Waterloo, Iowa

Note: There may be 1 or 2 others which I can't remember. If important, please contact DR. Hoekstra.

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 7

**APP619**

Case 6:12-cv-02050-JSS   Document 84-7   Filed 02/03/14   Page 21 of 85     Sellers

**EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

Social Security Disability 000017

## SECTION 6 -- EDUCATION/TRAINING INFORMATION

### Complete SECTION 6 if you are age 18 years old or older.

**6.A.** Check the highest grade of school completed.

School:

| None | K | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | GED |
|------|---|---|---|---|---|---|---|---|---|---|----|----|----|-----|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

College:

| 1 | 2 | 3 | 4 or more |
|---|---|---|-----------|
| ☐ | ☐ | ☐ | ☑ |

Approximate date completed: __May 1995__

**6.B.** Since the date of your last medical disability decision (see date on top right side of Page 1), have you completed or will you complete any type of special job training, trade or vocational school? *what date?*

☐ YES (Complete the following information.)     ☑ NO

| NAME OF SCHOOL |
|---|
| Not Applicable |

| ADDRESS | PHONE |
|---|---|
| Not Applicable | ( Not Applicable ) |

| CITY | STATE | ZIP | |
|---|---|---|---|
| ( Not Applicable ) | | | (area code)    (phone number) |

| TYPE OF PROGRAM |
|---|
| Not Applicable |

| APPROXIMATE DATE COMPLETED (or will complete) |
|---|
| Not Applicable |

**If you need more space, use SECTION 10 -- REMARKS.**

APP620

Case 6:12-cv-02050-JSS   Document 84-7   Filed 02/03/14   Page 22 of 85   Sellers

EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS

Social Security Disability 000018

## SECTION 7 — UPDATED WORK INFORMATION

If you are under age 14, skip to SECTION 10 — REMARKS.
If you are age 14 or older, complete SECTION 7. A., and, as appropriate, B., C., and D. only. Then skip to
SECTION 10 — REMARKS.
If you are age 16 or older, complete all of SECTION 7.

**7.A.** ARE YOU WORKING NOW?

☐ **Full-time** (Skip to Question 7.D.)

☐ **Part-time** (Skip to Question 7.D.)

☑ **Not working now** (Continue to Question 7.B.)

| **7.B.** If you are not working now, did you work **since the date of your last medical decision** (see date on top right side of Page 1)? | **7.C.** If you are not working now, do you believe that your medical condition has improved? |
|---|---|
| ☐ YES (Go to Question 7.C.)<br>☑ NO (Skip to Question 7.E.) | ☐ YES<br>☑ NO |

**7.D.** If you have worked at any time **since the date of your last medical disability decision** (see date on top right side of Page 1), complete the following information for each job you have done. List the most recent job first.

| | | JOB 1 | JOB 2 | JOB 3 |
|---|---|---|---|---|
| JOB TITLE (example: cook) | | Not Applicable | Not Applicable | Not Applicable |
| TYPE OF BUSINESS (example: restaurant) | | | | |
| JOB DESCRIPTION | | | | |
| DATES WORKED (month and year) | FROM: | | | |
| | TO: | | | |
| HOURS PER DAY | | | | |
| DAYS PER WEEK | | | | |
| RATE OF PAY (per hour, day, week, month, or year) | | | | |
| REASON YOU STOPPED WORK | | | | |

If you need more space, use SECTION 10 — REMARKS.

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 9

Case 6:12-cv-02050-JSS   Document 84-7   Filed 02/03/14   Page 23 of 85   Sellers
Social Security Disability 000019
**EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

## SECTION 7 – UPDATED WORK INFORMATION, continued

**7.E.** If you are not working, do you believe that you are able to work?

  ☑ No, I don't believe that I am able to work at this time.

  ☐ Yes, and I believe that I do **not** have limitations or restrictions on my ability to work.

  ☐ Yes, but I believe that I have limitations or restrictions on my ability to work. (Please explain.)

**7.F.** Has your doctor(s) told you that you are able to work?

  ☑ No      (Skip to Section 8)

  ☐ Did not say      (Skip to Section 8)

  ☐ Yes, and my doctor(s) did **not** place limitations or restrictions on my ability to work.

  ☐ Yes, but my doctor(s) placed limitations or restrictions on my ability to work. (Please explain. If the same as 7.E., write "same" here.)

| **7.G.** What is the name(s) of the doctor(s) who said you were able to work? | **7.H.** According to your doctor, when were/are you able to begin work? |
|---|---|
| Not Applicable | Not Applicable |
| (Please make sure that this doctor(s) is listed in SECTION 3.) | |

**If you need more space, use SECTION 10 – REMARKS.**

## SECTION 8 – VOCATIONAL REHABILITATION, EMPLOYMENT, or OTHER SUPPORT SERVICES INFORMATION

**Complete SECTION 8 if you are age 18 years old or older.**

**8.A.** Since the date of your last medical disability decision (see date on top right side of Page 1), have you participated, or are you participating, in the **Ticket to Work Program**, a plan with a private or State Vocational Rehabilitation Services, an employment network, or any other support services to help you go to work?

  ☐ YES (Complete the following information.)      ☑ NO (Skip to SECTION 9.)

| NAME OF ORGANIZATION | Not Applicable | |
|---|---|---|
| NAME OF COUNSELOR | Not Applicable | |
| ADDRESS   Not Applicable | | PHONE   Not Applicable |
| CITY   Not Applicable | STATE   Applicable    ZIP | (area code)   (phone number) |

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 10

**APP622**

Case 6:12-cv-02050-JSS   Document 84-7   Filed 02/03/14   Page 24 of 85

**EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**   Sellers

Social Security Disability 000020

**8.B. When did you start participating in the plan?**

Not Applicable

**8.C. Are you still participating in the plan?**
- ☐ YES
- ☐ NO. I completed the plan on: _____
  (date completed)
- ☐ NO. I stopped participating in the plan before completing it. (Please explain why you are no longer participating.)

(Not Applicable)

**8.D. Types of services or tests provided (for example: intelligence or psychological testing, vision, physicals, hearing, workshops, schools, colleges):**

(Not Applicable)

If you need more space, use SECTION 10 – REMARKS.

---

**SECTION 9 – INFORMATION ABOUT YOUR DAILY ACTIVITIES**

**Complete SECTION 9 if you are age 18 years old or older.**

**9.A.** Describe what you do in a typical day.

1.) Take care of Dog when I get up around (4:30-5:30) &throughout day
   – FEED, PET, TAKE OUTSIDE

2.) Do minor household chores in cold months and some yard work in warm weather (typically 1-2 hrs/day, then need rest)
   (Things like Dishes, LOAD or two of laundry, cook a meal, pick up stuff)
   (OUTSIDE: Things like mowing, pulling weeds, trimming bushes)

3.) Take medications 3-4 times a day.

4.) Take care of my own personal needs (Meals, shower, etc.)

5.) Watch News and Financial channels. (Obsessive-Compulsive behavior – PARANOID THAT SOMETHING ELSE WILL NEGATIVELY IMPACT FAMILY (changes world-wide, terrorism, corp.crime, financial losses in stock market, changes in laws & benefits, etc..)

6.) Try to repair computers

7.) Pay bills

8.) Doctor Appointments, therapy sessions, getting prescriptions refilled, Medication, therapy assignments, etc...

9.) Go to grocery store, or get gas for car, or go through drive through at bank.

10.) Assemble info for doctors, reviews, taxes, benefits, etc.

11.) Work on FINANCIAL PLANNING REQUIRED to KEEP KIDS in college and/or other needs, given 40% reduction in income.

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 11

## SECTION 9 – INFORMATION ABOUT YOUR DAILY ACTIVITIES, continued

**9.B.** Do you have difficulty doing any of the following? (Please explain any "Yes" answers.)

| | | | |
|---|---|---|---|
| Dressing | ☑ No | ☐ Yes | |
| Bathing | ☑ No | ☐ Yes | |
| Caring for hair | ☑ No | ☐ Yes | |
| Taking medicine | ☑ No | ☐ Yes | But do require reminders periodically. |
| Preparing meals | ☑ No | ☐ Yes | |
| Feeding self | ☑ No | ☐ Yes | |
| Doing chores (inside/outside house) | ☐ No | ☑ Yes | FATIGUE, Dizziness, shakiness/ difficulty in keeping hands stable, memory problems (can do for 1-2 hrs) |
| Driving or using public transportation | ☑ No | ☐ Yes | Although I do have anxiety /panic attacks WHEN IN PUBLIC, |
| Shopping | ☐ No | ☑ Yes | especially if I could run into there employees, As just noted, I try to avoid people. (can AT LOW traffic time periods) |
| Managing money | ☐ No | ☑ Yes | MAKING A LOT OF BAD DECISIONS, WHICH I DID NOT USED TO DO, |
| Walking | ☑ No | ☐ Yes | ALTHOUGH I do periodically lose my balance, |
| Standing | ☑ No, but,, ☑ Yes | | FATIGUE QUICKLY IF FOR A LONG TIME (1+hours), but can do this |
| Lifting objects | ☑ No, but.. ☑ Yes | | TEND TO Drop more things & fatigue QUICKLY. (Due to dizzyness, inability to keep hands stable, balance problems) |
| Using arms | ☑ No | ☐ Yes | But do have more arthritic conditions in joints (didn't use to) |
| Using hands or fingers | ☐ No | ☑ Yes | They have become more arthritic. The biggest problem is not being able to do "exacting" Activities (Like putting |
| Sitting | ☑ No | ☐ Yes | a screwdriver into a screw, changing a light bulb, pouring liquids, etc.) |
| Seeing, hearing, or speaking | ☐ No | ☑ Yes | SEEING: EYESIGHT HAS EPISODES OF Blurriness (BOTH EYES) SPEAKING: HAVE A LOT OF DIFFICULTY PICKING RIGHT WORDS IN A conversation – part of this is memory related & part of it is the difficulty in processing thoughts APPROP HEARING: Difficult to stay ENGAGED |

Case 6:12-cv-02050-JSS  Document 84-7  Filed 02/03/14  Page 26 of 85
Sellers
Social Security Disability 000022

## SECTION 9 – INFORMATION ABOUT YOUR DAILY ACTIVITIES, continued

**9.i. (continued)** Do you have difficulty doing any of the following? (Please explain any "Yes" answers.)

| | | | |
|---|---|---|---|
| Concentrating | ☐ No | ☑ Yes | EASILY DISTRACTED BY OTHER SOUNDS OR ACTIVITIES (Ex: IF SOMEONE IS TALKING WHILE I'm READING, TRYING TO DO THINGS OR HAVE A TV or RADIO ON. |
| Remembering | ☐ No | ☑ Yes | STILL SEEM TO HAVE GOOD RECALL ON MOST LONG-TERM MEMORY ITEMS, BUT HAVE PROBLEMS WITH NEW & SHORT TERM items! |
| Understanding/following directions | ☐ No | ☑ Yes | – HAVE Difficulty understanding new topics – CAN FOLLOW DiRECTIONS, BUT AM LIMITED BY SHORT-TERM MEMORY PROBLEMS |
| Completing tasks | ☐ No | ☑ Yes | HAVE TROUBLE MULTI-TASKING, QUICK COMPREHENSION, BE ABLE TO remember recent comments, AND MEETING DEADLINES (LEADS TO PANIC ATTACKS) |
| Getting along with people | ☐ No | ☑ Yes | – NO LONGER TRUST PEOPLE – HAVE HIGH ANXIETY AROUND PEOPLE. – PREFER TO AVOID ALL CONTACT. (VERY FEW CONTACTS, BESIDE ▨ FAMILY |

**9.C.** Do you use an assistive device (for example: eye glasses, hearing aids, braces, canes, crutch(es), walker, wheelchair)?

☐ NO
☑ YES (Please describe what kind, when and how you use it.)

EYE GLASSES – FOR READING.
PERSCRIPTION Medications – CAPABILITIES DRAMATICALLY DETERIORATE WITHOUT THEM.

**9.D.** Do you have hobbies or interests?

☐ NO
☑ YES (Please describe what they are and how much time you spend doing them.)

– CONSTANTLY MONITORING THREATS, VIOLENCE, GLOBAL AND LEGISLATIVE CHANGES. (STILL IN A FIGHT OR FLIGHT MINDSET)

– DEERE ACTIONS, AS MY PTSD IS LINKED TO THEM.

– FINANCIAL RESOURCES NEEDED TO ADDRESS FAMILY NEEDS (INVESTMENTS, CUTTING PERSONAL BUDGET IN HALF, College EXPENSES)

– GAMBLING ADDICTION, WHICH HAS BEEN A METHOD FOR ESCAPING DISCOMFORT (ANXIETY/CHEST PAIN, PANIC ATTACKS, ETC.)

If you need more space, use SECTION 10 – REMARKS.

– MAJORITY OF PAST INTERESTS AND HOBBIES HAVE CEASED. (FRIENDSHIPS, GATHERINGS, PUBLIC ACTIVITIES)

– UNTIL PTSD/FINANCIAL CONCERNS/OUTSTANDING Deere, ISSUES ARE RESOLVED, I WILL BE IN A "FIGHT OR FLIGHT MINDSET" (RESOURCES, BASIC NEEDS, DEFENDING ONESELF, PREPARING FOR CONFRONTATIONS)

FORM SSA 454-BK (4-2006) ef (04-2006) (Destroy Prior Editions) PAGE 13

**APP625**

Case 6:12-cv-02050-JSS Document 84-7 Filed 02/03/14 Page 27 of 85
**EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS** Sellers
Social Security Disability 000023

**SECTION 10 - REMARKS**

Please provide any additional information you did not show in earlier parts of this form. You may also attach any medical records, copies of prescriptions, or any other records about your current illnesses, injuries, or conditions you have at home that you wish to give us. When you are finished, or if you don't have anything to add, be sure to complete the information below.    *see attachments at the end of document*

(Section 2 - 2A)   8.) health changes which occur whenever his PTSD is triggered. Examples include high anxiety, lack of patience / behavioral control, high blood pressure, severe fatigue, chest pain, migraines, balance problems periodically, etc.)

9) Continuing to experience a major deterioration in short-term memory. (Forgetting appointments, things I started to do as I went downstairs & forgot by the time I got there, etc..)

10.) Obsessive / Compulsive characteristics, in addition to paranoia

(Section 2 - 2B)   5) Placed on Synthroid for a thyroid problem (Sept 2004)
— Hypothyroid — Hyperlipidemia.

6) Placed on Zocor for elevated blood pressure. (Sept 2006)

7) Cholesterol & triglycerides improve, but still elevated (Dec 2007)
— After increasing exercise activity and changing diet

8) High liver readings (ALT was 88 / should be under 40)
(AST was 62 / should be under 40)
— tests were run to check for liver damage.

9) Increased Hydroxyzine dosage for increased anxiety
(treating PTSD anxiety triggered by more Deere-related activities)
(June - Aug 2008?)

10) Weight increasing as anxiety increases. (Aug-Oct 2008)

11) Having blurriness in eyes, deterioration of eyesight & had a minor lesion / cyst inside the left eyelid. Also began heat packs on right eye to try to head off similar condition (Fall 2006?)

**Date Form Completed** (month, day, year)    Section 3 - 4) Jewell Cooper (Gambling / Addiction counselor → See info. in 3C
12/02/08

If the person completing this form is NOT the disabled person, please complete the following information.

**Name** (please print)

| **Address** (number and street) | | | **E-mail address** (optional) |
|---|---|---|---|
| **City** | **State** | **ZIP** | **Relationship to Disabled Person** |

**APP626**
Case 6:12-cv-02050-JSS   Document 84-7   Filed 02/03/14   Page 28 of 85   Sellers
**EXHIBIT H - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**
Social Security Disability 000024

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL JOSEPH SELLERS, | Case no. 6:12-cv-02050-JSS |
| Plaintiff, | |
| v. | PLAINTIFF'S ANSWER TO DEFENDANT'S THIRD REQUEST FOR ADMISSION DIRECTED TO PLAINTIFF MICHAEL SELLERS |
| DEERE & COMPANY a/k/a JOHN DEERE COMPANY, CLYDE D'CRUZ, individual, | |
| Defendants. | |

COMES NOW the above-named Plaintiff in response to Defendant's third request for admissions as follows:

You are requested to admit the genuineness of the documents described in these requests, copies of which are attached.

<u>Request No.14</u>: Exhibit N, September 7, 2010 email.

Admit ___X___                    Deny_____

<u>Request No.15</u>: Exhibit O, June 10, 2010 emails regarding EEOC trip.

Admit ___X___                    Deny_____

<u>Request No.16</u>: Exhibit P, emails exchanged on October 31, 2011 and March 1, 2012.

Admit ___X___                    Deny_____

<u>Request No.17</u>: Exhibit Q, October 31, 2011 email.

Admit ___X___                    Deny_____

Respectfully Submitted

_Gregory T. Racette_

Gregory T. Racette
Amy Pellegrin
HOPKINS & HUEBNER, P.C.
2700 Grand Avenue, Suite 111
Des Moines, Iowa 50312
Telephone: 515-244-0111
Facsimile: 515-697-4299
Email: gracette@hhlawpc.com
ATTORNEYS FOR PLAINTIFF

## Certificate of service

The undersigned certifies that a true copy of the foregoing document was served upon one of the attorneys of record for each party to the above-entitled cause at the address shown below on January 20, 2014:

Frank Harty  AT0003356
Angel A. West  AT0008416
Debra L. Hulett  AT0003665
Frances M. Haas  AT0009838
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Telephone:  (515) 283-3100
Facsimile:  (515) 283-3108
Email: fharty@nyemaster.com
Email: aaw@nyemaster.com
Email: dlhulett@nyemaster.com
Email: fmhaas@nyemaster.com
ATTORNEYS FOR DEFENDANTS

Mediacom Mediacom High Speed Internet Webmail

gdforster@mchsi.com

Garden Club

Friday, September 17, 2010 5:30:27 PM

From: glenius@mchsi.com

To: sharpewilliam@gmail.com; GDForster@mchsi.com; galeni3@aol.com; drcathouse@yahoo.com;
MJSellers@aol.com; Hamjer@cfu.net; twoltime@netins.net

Group, Wanda has been on phone with both Shannon and Bill O'brien this week and it is TIME to have a group meeting. This is not a casual request notice. We really need to meet and have some very serious discussions.

Many of Shannon's comments are very disturbing and we have proof that she has been leaking confidential medical info to Deere against HEPA laws and our direct requests. Her comments are now contradicting herself and frankly I don't think she knows what she is doing except trying to plug holes (her words) and has absolutely no "end date" in sight. Bill agreed that she has very little "real power to make things happen" and our case could easily continue to drag on or worse come to a standstill due to lack of info. I have received another new job offer and it is not "good". I am fed up as are most of us.

However, the real deal here is that we need to meet to discuss the Bill O'brien aspect. He will be calling back and we need to provide him with definitive info on how we want to proceed. To keep him dangling forever, is not really an option at some point. Detailed info will NOT be sent out in emails, period. It is too easy for that info to be forwarded on to Shannon and co. and that may really work against us in the future. Her "witness accounts" story is shaky at best and quite frankly, somewhat disturbing. It is a nice dream to think that all is being taken care of for us. That is really not happening, and some of her statements regarding findings is anything but dreamlike.

I suggest we all try to meet next Thursday the 23rd at 5 pm at Mama Nicks or ?
Please RSVP.
Gary & Wanda

**EXHIBIT N - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

Mediacom Mediacom High Speed Internet Webmail       gdforster@mchsi.com

## Details for EEOC Trip to Milwaukee     Thursday, June 17, 2010 7:22:11 PM

From: glelaf@mchsi.com

To: glelaf@mchsi.com; GDForster@mchsi.com; mjsellers@aol.com; twoltime@netins.net; tlc1234@juno.com; galeni3@aol.com; hamjer@cfu.net; sharpewilliam@gmail.com

This is Gayle Forster. As you can see from Delyorce's last e-mail, Shannon at the EEOC has agreed to meet with us on Thursday, June 24th at 9:00 a.m.

For any of you who would like to attend this meeting, we are planning on leaving Waterloo at about 1:00 p.m. on Wednesday, 23 June. It is a 4-1/2 hour drive, so that will put us in Milwaukee at about 5:30 p.m.

Some of us have made hotel reservations at the Days Inn and Suites in Milwaukee (which is just a little over one mile from the EEOC Federal Building) for the night of the 23rd. If you would like to make your own reservation there, the address and telephone number are as follows:

Days Inn and Suites Milwaukee
1840 N. 6th Street
Milwaukee, WI 53212
Telephone: 414-265-5629

For those of us who are able to attend, we are planning to have dinner together Wednesday night to compile our list of questions and to prepare for the meeting the following morning.

If you cannot attend, please send any questions you would like us to ask to either Delyorce's
e-mail or to my e-mail which is "glelaf@mchsi.com.

Also, Greg and I are taking our van on the trip which carries 6 passengers plus luggage. We have 4 of the seats occupied but there are two empty seats for anyone who would like to ride up with us. If you would like to do this, just let me know via e-mail.

Jerry, could you please make sure that Jack is aware of this in case he would like to come with us.

Thanks,
Gayle Forster


----- Forwarded Message -----
From: "Delyorce Rebouche" <drcathouse@yahoo.com>
To: glelaf@mchsi.com, GDForster@mchsi.com, mjsellers@aol.com, twoltime@netins.net, tlc1234@juno.com, galeni3@aol.com, hamjer@cfu.net, sharpewilliam@gmail.com
Sent: Tuesday, June 15, 2010 10:54:01 PM GMT -05:00 US/Canada Eastern


As you all can see from the e-mail to Shannon, some of us are planning to go to Milwaukee on 23 - 24 June to see if a little face time might speed things along. We should at least have updates on what is happening with all our cases.

Anyone who wants to caravan along is welcome to do so; let me know so that we can try

**EXHIBIT O - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

to coordinate travel plans. I'll let everyone know where we are planning to stay, but you could make whatever reservations you prefer.

If you have questions to ask, please send them to me so that I can put everything together and make sure we get everyone's questions answered.

Jerry, can you please relay this information to Jack?

And if I have missed anybody, please let me know!

Thanks!
Delyorce

## Zimbra

## Re: Attorney Appointment in Des Moines

From: mjsellers@aol.com

Subject: Re: Attorney Appointment in Des Moines

To: glelaf@mchsi.com

Thu, Mar 01, 2012 04:07 PM

Hi Gayle ! How did your Des Moines trip go ? What kind of reaction did you get from the attorneys?

PS What have you been up to lately? Still enjoy being a gramdma ? I've tried to call a number of times, but... I must be using the wrong phone number. Sorry. My meds continue to screw me up with my short term memory.

——Original Message——
From: glelaf <glelaf@mchsi.com>
To: Sellers, Mike <mjsellers@aol.com>
Sent: Mon, Oct 31, 2011 1:46 pm
Subject: Attorney Appointment in Des Moines

```
Hi Mike .... It was great talking with you the other day. I told you I would
e-mail you with the info on the attorney meetings down in Des Moines on the 8th
of Novmember so here it is.

I should start out by sayting that Deloryce is the one who set up the meetings
with the lawyers. Then, second I want to let you know that I am really sorry,
but I misunderstood what Deloryce said earlier. She told me to call you to see
if you had received your findings yet which I did, but I failed to understand
that the reason she wanted me to do that is evidently both attorneys want to
only meet with those of us who have already received our findings from the EEOC.

She said she had called all the others in the group to see how many of them had
findings so she could in turn let the attorneys know how many of us there are;
but didn't have your phone number. As soon as the rest of the group receives
their findings then the attorneys would want to talk with you at that time.

So, when you get your findings you should contact these law firms if you are
interested. These are the same attorneys that were listed in the letters that
Bill O'Brian sent to all of us earlier this summer.

Gayle
```

**EXHIBIT P - REQUESTS FOR ADMISSION TO MICHAEL SELLERS**

APP632

| | |
|---|---|
| MICHAEL JOSEPH SELLERS, | Case no. 6:12-cv-02050-JSS |
| Plaintiff, | |
| v. | **PLAINTIFF'S ANSWER TO DEFENDANT'S FOURTH REQUEST FOR ADMISSION DIRECTED TO PLAINTIFF MICHAEL SELLERS** |
| DEERE & COMPANY a/k/a JOHN DEERE COMPANY, CLYDE D'CRUZ, individual, | |
| Defendants. | |

COMES NOW the above-named Plaintiff in response to Defendant's fourth request for admissions as follows:

You are requested to admit the genuineness of the documents described in these requests, copies of which are attached.

<u>Request No.18:</u>  Deere pays Michael Sellers a monthly long term disability benefit.

Admit ___ X ___                              Deny_____

<u>Request No. 19</u>:   Under Deere's long term disability benefit plan, Michael Sellers's monthly long term disability benefit is $3,291.60.

Plaintiff ADMITS in part and DENIES in part.

Plaintiff ADMITS that the maximum gross income level Plaintiff can maintain and still be eligible for John Deere's benefit plan is $3,291.60 according to the John Deere benefit book. Plaintiff objects to the use of the term "benefit" as it is used in this Request in that it is vague and ambiguous.  Without waiving such objection, Plaintiff DENIES that he receives any "benefit" from John Deere in the amount of $3,291.60 based on the traditional definition of "benefit" which would mean "payment."

<u>REQUEST NO. 20</u>:  Under Deere's long term disability benefit plan, the gross monthly payment amount to Michael Sellers is $1,426.70, which is the monthly benefit less an offset for Social Security Disability Income.

Plaintiff ADMITS that the <u>net</u> monthly payment amount to Michael Sellers was $1169.38 as of October 31, 2013. This amount has fluctuated over time.

**REQUEST NO. 21:** Under Deere's long term disability benefit plan, Michael Sellers's start date for long term disability was April 1, 2006.

Admit ___X___      Deny_____

Respectfully Submitted

*[signature]*

Gregory T. Racette
Amy Pellegrin
HOPKINS & HUEBNER, P.C.
2700 Grand Avenue, Suite 111
Des Moines, Iowa 50312
Telephone: 515-244-0111
Facsimile: 515-697-4299
Email: gracette@hhlawpc.com
ATTORNEYS FOR PLAINTIFF

### Certificate of service

The undersigned certifies that a true copy of the foregoing document was served upon one of the attorneys of record for each party to the above-entitled cause at the address shown below on January 29, 2014:

Frank Harty  AT0003356
Angel A. West  AT0008416
Debra L. Hulett  AT0003665
Frances M. Haas  AT0009838
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Telephone: (515) 283-3100
Facsimile: (515) 283-3108
Email: fharty@nyemaster.com
Email: aaw@nyemaster.com
Email: dlhulett@nyemaster.com
Email: fmhaas@nyemaster.com
ATTORNEYS FOR DEFENDANTS

| | |
|---|---|
| DELYORCE RAYE REBOUCHE, | Case no. 6:12-cv-02064-JSS |
| Plaintiff, | |
| v. | **PLAINTIFF'S ANSWER TO DEFENDANT'S THIRD REQUEST FOR ADMISSION DIRECTED TO PLAINTIFF DELYORCE REBOUCHE** |
| DEERE & COMPANY a/k/a JOHN DEERE COMPANY, RODGER BURRIS, AND BRUCE BOARDMAN, | |
| Defendants. | |

COMES NOW the above-named Plaintiff in response to Defendant's third request for admissions as follows:

You are requested to admit the genuineness of the documents described in this request, copies of which are attached.

<u>**Request No. 13:**</u> Exhibit M, September 17, 2010 email.

Admit ___X___          Deny_____

<u>**Request No. 14:**</u> Exhibit N, email forwarded to Delyorce Rebouche on March 8, 2010.

Admit ___X___          Deny_____

<u>**Request No. 15:**</u> Exhibit O, email forwarded by Delyorce Rebouche on March 15, 2010.

Admit ___X___          Deny_____

<u>**Request No. 16:**</u> Exhibit P, emails exchanged on March 11, 2010 and March 14, 2010.

Admit ___X___          Deny_____

<u>**Request No. 17:**</u> Exhibit Q, June 2010 emails regarding EEOC trip.

Admit ___X___          Deny_____

**Request No. 18:** Exhibit R, June 28, 2010 email.

Admit \_\_\_X\_\_\_\_            Deny_____

**Request No. 19:** Exhibit S, emails exchanged by Delyorce Rebouche and Gayle Forster in September 2010 and October 2010.

Admit \_\_\_X\_\_\_\_            Deny_____

**Request No. 20:** Exhibit T, email forwarded to Delyorce Rebouche on August 5, 2011.

Admit \_\_\_X\_\_\_\_            Deny_____

**Request No. 21:** Exhibit U, July 31, 2011 email.

Admit \_\_\_X\_\_\_\_            Deny_____

**Request No. 22:** Exhibit V, emails exchanged by Delyorce Rebouche and Gayle Forster in February 2012.

Admit \_\_\_X\_\_\_\_            Deny_____

**Request No. 23:** Exhibit W, January 25, 2012 email.

Admit \_\_\_X\_\_\_\_            Deny_____

**Request No. 24:** Exhibit X, November 2011 email.

Admit \_\_\_X\_\_\_\_            Deny_____

Respectfully Submitted

_____

Gregory T. Racette
Amy Pellegrin
HOPKINS & HUEBNER, P.C.
2700 Grand Avenue, Suite 111
Des Moines, Iowa 50312
Telephone: 515-244-0111
Facsimile: 515-697-4299
Email: gracette@hhlawpc.com
ATTORNEYS FOR PLAINTIFF

Certificate of service

The undersigned certifies that a true copy of the foregoing document was served upon one of the attorneys of record for each party to the above-entitled cause at the address shown below on January 20, 2014:

Frank Harty  AT0003356
Angel A. West  AT0008416
Debra L. Hulett  AT0003665
Frances M. Haas  AT0009838
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Telephone:  (515) 283-3100
Facsimile:  (515) 283-3108
Email: fharty@nyemaster.com
Email: aaw@nyemaster.com
Email: dlhulett@nyemaster.com
Email: fmhaas@nyemaster.com
ATTORNEYS FOR DEFENDANTS

Mediacom Mediacom High Speed Internet Webmail

gdforster@mchsi.com

Directions to Mike's offr ice

Monday, November 07, 2011 5:58:51 PM

From: drcathouse@yahoo.com

To: glelaf@mchsi.com; gdforster@mchsi.com

Reply To: drcathouse@yahoo.com

Mike Carroll sent a letter giving directions to his office. Road construction near it will make parking a challenge.

He indicated we should park on the east side of the building on the 1st St. bridge. Other instructions as you already have.

Supposed to rain tomorrow, and get down to 31 tomorrow night.

Stay safe! I need all the friends I have! (And one less cat helping.)

dr

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| GAYLE LELA FORSTER AND GREGORY DAVID FORSTER, | Case no. 6:12-cv-02072-JSS |
| Plaintiff, | |
| v. | |
| DEERE & COMPANY a/k/a JOHN DEERE COMPANY, CLYDE D'CRUZ, KEVIN KEITH, BRIAN MATSON AND BRIAN CARLSON, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S FIFTH SET OF REQUEST FOR ADMISSIONS DIRECTED TO GAYLE FORSTER** |
| Defendants. | |

Plaintiff, Gayle Forster, submits the following responses to Defendant's fifth set of request for admissions:

You are requested to admit the genuineness of the document described in this request, a copy of which is attached:

**REQUEST NO. 18:** Exhibit Q, email forwarded by Gayle Forster on March 8, 2010

Admit _____X_____          Deny _____

**Request No. 19:** Exhibit R, emails exchanged on March 11, 2010 and March 14, 2010.

Admit ___**X**___          Deny _____

**Request No. 20:** Exhibit S, June 2010 emails regarding EEOC trip.

Admit ___**X**___          Deny _____

**Request No. 21:** Exhibit T, June 28, 2010 email.

Admit ___**X**___          Deny _____

**Request No. 22:** Exhibit U, emails exchanged by Delyorce Rebouche and Gayle Forster in September 2010 and October 2010.

Admit ___**X**___          Deny _____

**Request No. 23:** Exhibit V, emails exchanged on October 31, 2011 and March 1, 2012.

Admit ____X____          Deny _____

**Request No. 24:** Exhibit W, emails exchanged by Delyorce Rebouche and Gayle Forster in February 2012.

Admit ____X____          Deny _____

**Request No. 25:** Exhibit X, January 29, 2012 and February 1, 2012 email.

Admit ____X____          Deny _____

**Request No. 26:** Exhibit Y, October 31, 2011 email.

Admit ____X____          Deny _____


Respectfully Submitted,

Gregory T. Racette
Amy Pellegrin
HOPKINS & HUEBNER, P.C.
2700 Grand Avenue, Suite 111
Des Moines, Iowa 50312
Telephone: 515-244-0111
Facsimile: 515-697-4299
Email: gracette@hhlawpc.com
ATTORNEYS FOR PLAINTIFF

## Certificate of service

The undersigned certifies that a true copy of the foregoing document was served upon one of the attorneys of record for each party to the above-entitled cause at the address shown below on January 20, 2014:

Frank Harty  AT0003356
Angel A. West  AT0008416
Debra L. Hulett  AT0003665
Frances M. Haas  AT0009838
NYEMASTER GOODE, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA  50309-3899
Telephone:  (515) 283-3100
Facsimile:  (515) 283-3108
Email: fharty@nyemaster.com
Email: aaw@nyemaster.com
Email: dlhulett@nyemaster.com
Email: fmhaas@nyemaster.com
ATTORNEYS FOR DEFENDANTS

## Zimbra

## Re: Attorney Appointment in Des Moines

From :     mjsellers@aol.com

Subject :   Re: Attorney Appointment in Des Moines

To :       glelaf@mchsi.com

Thu, Mar 01, 2012 04:07 PM

Hi Gayle !   How did your Des Moines trip go ?   What kind of reaction did you get from the attorneys?

PS   What have you been up to lately?   Still enjoy being a gramdma ?   I've tried to call a number of times, but... I must be using the wrong phone number.   Sorry.   My meds continue to screw me up with my short term memory.

——Original Message——
From: glelaf <glelaf@mchsi.com>
To: Sellers, Mike <mjsellers@aol.com>
Sent: Mon, Oct 31, 2011 1:46 pm
Subject: Attorney Appointment in Des Moines

Hi Mike .... It was great talking with you the other day.  I told you I would
e-mail you with the info on the attorney meetings down in Des Moines on the 8th
of Novmember so here it is.

I should start out by sayting that Deloryce is the one who set up the meetings
with the lawyers.  Then, second I want to let you know that I am really sorry,
but I misunderstood what Deloryce said earlier.  She told me to call you to see
if you had received your findings yet which I did, but I failed to understand
that the reason she wanted me to do that is evidently both attorneys want to
only meet with those of us who have already received our findings from the EEOC.

She said she had called all the others in the group to see how many of them had
findings so she could in turn let the attorneys know how many of us there are;
but didn't have your phone number.  As soon as the rest of the group receives
their findings then the attorneys would want to talk with you at that time.

So, when you get your findings you should contact these law firms if you are
interested.  These are the same attorneys that were listed in the letters that
Bill O'Brian sent to all of us earlier this summer.

Gayle

# APP643

# FILED UNDER SEAL

# APP644-649

# FILED UNDER SEAL

# APP650-658

# FILED UNDER SEAL

# APP659-716

# FILED UNDER SEAL

# APP720-726

# FILED UNDER SEAL

# APP727-728

# FILED UNDER SEAL

# APP729

# FILED UNDER SEAL

# APP730

# FILED UNDER SEAL

# APP731

# FILED UNDER SEAL

# APP732-733

# FILED UNDER SEAL

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Michael Sellers**

**Waterloo, IA 50701**

From: **Milwaukee Area Office**
**310 West Wisconsin Ave**
**Suite 800**
**Milwaukee, WI 53203**

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 260-2005-04322 | **Shannon M. Lemke, Investigator** | **(414) 297-3990** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  |  |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other *(briefly state)* |

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

APR 1 7 2012

On behalf of the Commission

Enclosures(s)

**John P. Rowe**
**Director**

*(Date Mailed)*

cc: **JOHN DEERE WATERLOO WORKS**
**400 Westfield Avenue**
**Waterloo, IA 50701**

**Covington & Burling LLP**
**Attn: Eric C. Bosset**
**1201 Pennsylvania Avenue NW**
**Washington D.C. 20004**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# U.S. Equal Employment Opportunity Commission

TO: **Iowa Civil Rights Commission**
**Grimes State Office Bldg**
**400 East 14th Street**
**Des Moines, IA 50319**

Date    **Apr 27, 2005**

EEOC Charge No.
**260-2005-04322C**

FEPA Charge No.
*05-05-49773*

MAY 11 2005

CHARGE TRANSMITTAL

SUBJECT:

| **Michael Sellers** | v. | **JOHN DEERE WATERLOO WORKS** |
|---|---|---|
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC        ☐ _____    on    **Apr 26, 2005**
                          *Name of FEPA*                                *Date of Receipt*

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

☐ EEOC requests a waiver                ☐ FEPA waives

☐ No waiver requested                    ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge
and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

Typed Name of EEOC or FEPA Official          Signature/Initials
**John P. Rowe**

---

| **Michael Sellers** | v. | **JOHN DEERE WATERLOO WORKS** |
|---|---|---|
| *Charging Party* | | *Respondent* |

TO WHOM IT MAY CONCERN:

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge.

☒ This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge.

☐ This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.

☐ This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge
for the following reasons:

Typed Name of EEOC or FEPA Official          Signature/Initials

---

TO: **Milwaukee District Office**
**310 West Wisconsin Ave**
**Suite 800**
**Milwaukee, WI 53203**

Date    **Apr 27, 2005**

EEOC Charge No.
**260-2005-04322**

FEPA Charge No.
*05-05-49773*

APP736

# U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **Human Resources**<br>**JOHN DEERE WATERLOO WORKS**<br>**400 Westfield Avenue**<br>**Waterloo, IA 50701** | **Michael Sellers** |
| | THIS PERSON *(check one or both)* |
| | ☒ Claims To Be Aggrieved |
| | ☐ Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**260-2005-04322C** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional Information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

☐ Title VII of the Civil Rights Act          ☒ The Americans with Disabilities Act

☒ The Age Discrimination in Employment Act          ☐ The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. ☐ No action is required by you at this time.

2. ☐ Please call the EEOC Representative listed below concerning the further handling of this charge.

3. ☒ Please provide by   **27-MAY-05**   a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. ☒ Please respond fully by   **27-MAY-05**   to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. ☐ EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
to
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| Marian L. Drew,<br>Intake Supervisor | **Milwaukee District Office** |
|---|---|
| *EEOC Representative* | **310 West Wisconsin Ave** |
| Telephone: **(414) 297-4077** | **Suite 800**<br>**Milwaukee, WI 53203** |

Enclosure(s): ☒ Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN   ☒ AGE   ☒ DISABILITY   ☒ RETALIATION   ☐ OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Apr 27, 2005 | John P. Rowe<br>District Director | |

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14 Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

# SHANNON LEMKE - Update

**From:** SHANNON LEMKE
**To:** MJSellers@aol.com
**Date:** 3/16/2012 9:32 AM
**Subject:** Update

Mr. Sellers:

I want to give you an update regarding your pending case against John Deere. At this time, the EEOC is prepared to issue you the Notice of Right to Sue which allows you ninety days to proceed to federal court.

After reviewing all the evidence in the file, it was inconclusive to show that your age, disability, or retaliation were bases for any employment actions taken against you. The evidence showed that the additional duties you received were all within the job description. The evidence further showed that even though you requested respondent stop assigning you more responsibilities as an accommodation, they were not obligated to because they were requiring you to perform the essential functions of you job. A respondent does not have to lower the standards or expectations for a position as a form of accommodation.

You further requested use of a conference room to enable you to better concentrate. The evidence revealed that you were allowed to use a conference, just no the conference room you preferred. A respondent has to provide an effective accommodation, not necessarily the specific accommodation requested.

As a whole, the evidence was inconclusive, and it is unlikely violations can be established. If you have more information you would like me to consider or wish to discuss, please contact me by March 23, 2012.

Thanks,

Shannon M. Lemke
Federal Investigator
EEOC- Milwaukee Area Office
310 W. Wisconsin Ave., Suite 800
Milwaukee, WI 53203
(414) 297-3990

This electronic mail transmission and any attachments are confidential and may contain privileged information. They should be read or retained only by the intended recipient. If you have received this electronic mail transmission in error, please notify me immediately, then delete the transmission from your system and destroy all printed copies.

file://C:\Documents and Settings\SLEMKE\Local Settings\Temp\XPgrpwise\4F6308A6EEOCMILWMI1... 3/16/2012

## SHANNON LEMKE - Case

| | |
|---|---|
| **From:** | SHANNON LEMKE |
| **To:** | MJSellers@aol.com |
| **Date:** | 4/11/2012 8:32 AM |
| **Subject:** | Case |

Hi Mike. I have read through all the information you recently submitted and it is all information I already have in your file, with the exception of the letter from Senator Harkin.

I understand your frustration and the points you make regarding your case; however as Senator Harken indicated, age must be the determining factor for the actions taken against you. In all the information in your file, age may be a factor but not necessarily the determining factor. This is the reason the agency would not be able to establish a violation under the Age Discrimination in Employment Act.

I have added the additional information to your file and ultimately it will be the decision of management if it changes the outcome of your case. If management determines it does not change the outcome, you will receive your Notice of Right to Sue which gives you ninety days to file a claim in federal court.


Thanks,

Shannon M. Lemke
Federal Investigator
EEOC- Milwaukee Area Office
310 W. Wisconsin Ave., Suite 800
Milwaukee, WI 53203
(414) 297-3990


This electronic mail transmission and any attachments are confidential and may contain privileged information. They should be read or retained only by the intended recipient. If you have received this electronic mail transmission in error, please notify me immediately, then delete the transmission from your system and destroy all printed copies.

le://C:\Documents and Settings\SLEMKE\Local Settings\Temp\XPgrpwise\4F854192EEOCMILWAUKE...5/11/2012

| | |
|---|---|
| **From:** | <MJSellers@aol.com> |
| **To:** | <SHANNON.LEMKE@EEOC.GOV> |
| **Date:** | 5/13/2005 11:15:07 AM |
| **Subject:** | Re: Meeting |

Thanks Shannon -thats fine.(some people will worry that the room could be bugged, etc..but it should be ok)  You must be staying at the Ramada.

Can you give us a brief overview of what the mtg will be addressing (ie results of Deere's info., procedures, questions or information which you want,etc..) Keep in mind that 3 of us have post-traumatic stress and are "extremely" nervous (blood pressures are climbing) about meeting so close to your first interviews. (i.e. we only get one shot and might not remember everything we should be passing on to you.

Should we be individually be preparing a list of people we'd like you or others to interview and some good questions to ask them?

INTERROGATORY NO. 5: If, prior to or after each injury alleged in your Petition(s) you suffered from, were treated for, were examined for, were observed for, were counseled for or were diagnosed as having or receiving any physical defect, injury or disease, or any mental, emotional or psychological condition or drug, alcohol or other consumption problem, for each:

    a.     Describe the nature of the difficulty.

    b.     How, when and where it occurred.

    c.     The duration of each.

    d.     The parts of the body affected and the extent thereof.

    e.     Any symptoms you still have from each and the extent thereof.

    f.     The names and street addresses of all persons, hospitals or other sources of care, treatment, examination, diagnosis, counseling or observation involved and what was done for you and by each.

**ANSWER:**
Deere & Company has had exchanged all medical records. They have the social security file. If there is something that Deere believes they don't have, tell us and we will give you a release. There is nothing hidden here. Dr. Piburn and James Harding, psychologist, are the primary doctors who believe this is work-related. You have their records.

I am totally disabled. I can not function in the work place according to my doctors. I am sure that is the case based on my own personal experience. As to how this occurred, I was subjected to over work and given more work to do than I could accomplish in the work time allowed. I made it clear to my employer what it was doing to me. Their response was to increase my work load when they full well knew the existing work load was taking me down.

There was a hostile work environment during this same period of time directed against me and other employees. Specifically, as to me, Clyde D'Cruz, Daria Jerauld, Chris Cox, Barry Schafter, and Kevin Keith (at a later time). There was a meeting and I was informed contemporaneously that Barry Schafter was told, in no uncertain terms by other employees, that there were serious problems with the hostile work environment and the over work situation which would in all likelihood lead to physical problems, mental problems, and other injuries for the employees who were being inflicted. He

INTERROGATORY NO. 8: State when, where, how and to whom, giving names and street addresses, you gave notice of each injury or disease for which you now make claim, and set out what you said on each occasion, to whom it was said, whether it was in written form and, if so, attach to your Answers to these Interrogatories a true copy of each such writing.

**ANSWER:**

Notice was given continually to Daria Jerauld and Clyde D'Cruz, as stated earlier. We will furnish the e-mails that we have upon receipt of the same, even though they may not be the total number of them.

JD-SEL-000322
APP743

INTERROGATORY NO. 14: List all employment and non-employment activities which you participated in prior to each claimed injury which you now contend that you cannot participate in to the extent you were previously capable as a result of the alleged injury and for each such activity state:

    a.    The extent to which your ability, performance or participation has been diminished.

    b.    The particular limitations restricting your participation.

**ANSWER:**

Before being afflicted with what I have answered earlier, I was able to do everything. I was not limited in my employment. I had good ratings on evaluations. My last evaluation in November, 2004 went downhill for the first time in my career. I had no problems functioning at home until I began to go downhill psychologically at work. I had no limitations whatsoever before this was set upon me. I had no psychological or physical problems at work or at home. After this took effect, I don't function at a very high level on both the psychological and physical standpoint. I do virtually nothing at present.

**INTERROGATORY NO. 28:** Please state each and every job function or work related activity which you allege caused or contributed to any injury or condition for which you are now making claim, the department name and number in which each such job function or activity occurred, the name(s) of your immediate supervisor(s) in each such department, the date(s) each such job function(s) or activities occurred, as well as how each such job function or activity caused or contributed to any injury or condition for which you are now making claim.

**ANSWER:**

I believe I have already answered this. I did my job well and I was fully capable of continuing to do my job well. They placed continuous additional work loads on me to the point I couldn't function. I was doing the work of two to three people at any given time. The issue isn't that I could or couldn't do my job function, but that I had too much to do and too much pressure on me to do two to three jobs that couldn't be done in 24 hours. I was working virtually night and day and couldn't keep up. They were aware of it because I told them. I worked Saturdays and I worked Sundays. There was not enough time in a 24 hour day to do the job they expected of me and had laid it upon me. I asked to be moved to a job I had prior to this and they refused. I told them what was happening to me. I told them about my decline psychologically and how this was stressing me. They did not answer the question of, "Why are you keeping me in this job?" After my discussion with Clyde where all of this was heard he added a new responsibility to my job – EDI Coordinator. I asked Daria why he did that and she said, "Clyde said he obviously didn't have enough to do contrary to what was said."

# Sellers Michael J

**From:** Sellers Michael J
**Sent:** Monday, February 14, 2005 5:07 PM
**To:** Jerauld Daria A
**Subject:** MJS Medical Condition

PAGE 56
MJS

**Subject: Update on my medical condition**
**From: Mike Sellers**
**Date: 14Feb05**

Daria,

This note is being sent to keep you updated on my deteriorating medical condition and the need to address some outstanding issues.

As I first mentioned last January 2004, I have been having some problems with            While I have tried to keep it from impacting my performance, a series of events at the end of our fiscal year and the start of 2005 have triggered a much more advanced stage of (

In early December, 2004, I mentioned this and that's when you rightfully suggested that I pay a visit to the Deere Doctor. This was done in mid-December 2004. As you know, the initial visit did not go very well.

I therefore contacted my current Psychologist for help and have been seeing him about 2-3 times a month since then to actively address my illness. I have also undergone a physical and an MRI in the hope of better understanding the cause of the symptoms which I am having.(Vision changes, periodically lose my balance, short term memory issues, panic attacks,etc..) I am hoping to know more on this shortly. In addition, I met with a Psychiatrist on Feb 2nd to have my antidepressant dosage increased to the maximum dosage and to start using an anxiety medication.

In last Monday's (07Feb05) meeting with Clyde (Revised goals and responsibilities), I mentioned that I was periodically having difficulty comprehending new information when under a lot of stress. This was the reason I asked you and Clyde if more information could be put into emails so that I could have an easy reference when needed. In response, Clyde mentioned that he didn't think this would be a productive use of our time and suggested that I visit with the Deere doctor, if I thought special health considerations were warranted.

This letter is being sent to let you know that I will be pursuing this option and will be working through all related issues with Doctor Olsen, as you have requested.

Mike


**Michael J Sellers CIRM, CFPIM, CPM**
**Supply Mgmt Process Pro**
**John Deere Waterloo Works**

**Phone: 319-292-8126**
**Fax:    319-292-8746**
**Email: SellersMichaelJ@johndeere.com**

**From:** Sellers Michael J
**Sent:** Thursday, November 11, 2004 10:34 AM
**To:** Keith Kevin S
**Subject:** Follow-up on SM Presentation

*Note: I just now Noticed that this was "before" my "poor perf." evaluation*

Hi Kevin,

**Some quick, candid, feedback after having some time to digest all of the HR Process Info. which you presented at our recent Supply Management Meeting in the DSS auditorium**

· First, I believe the general direction of our new/future HR "processes" is a very positive one (ie fact based, proactive, transparent, consistent, fair, etc..) and very impressive.
- Unfortunately, our "current/past" assessment methods & reorganizations have generated a lot of pent up anger and distrust - not only within the department, but as it relates to Human Resources.
- Simply put, many people still do not feel that HR is an unbiased advocate of fairness and problem resolution. (Hence the reason you didn't get many questions) If you sincerely want candid comments from our department you need to ask a reputable 3rd party to obtain and summarize the info. There's interest in change - just a reluctance to openly discuss the details right now.
- To successfully transition from the existing process and organization to our future one will require us to actively and positively address outstanding issues and to establish a high degree of credibility as we move foward.

**- Probable keys to our future success:**

**1.) Fairness** - With the large number of reorganizational moves, aggressive goals, and new Global Job Descriptions/Evaluations, etc.. we need clear guidelines for "consistently" assessing job performance within and "across" labor grade positions. (Complexity level, work loads, Developmental skills/general support and goal outcomes or accomplishments)

- Our current process focuses heavily on the latter and has somewhat of a blind spot on the others. For example, it's possible for those in more demanding/higher skilled jobs to get lower ratings than those in less demanding jobs. Historically, people in these situations either move out of the department, leave the company, or build up emotions over time. It can also create a situation where a new employee is moved into positions too quickly. Obviously, none of these are good for the company. Are there other options in the future?

- Seems like we need to define a progression of job assignments from basic to complex (within each department) which prepares people for the next labor grade and addresses these assessment issues accordingly.

**2.) Developmental Opportunities Outside of the Department** - The ability of our Human Resources Department to "actively" provide and "encourage" rotational assignments outside of a department, especially for employees who don't feel their current position is fairly assessed. (Would be consistent with developing more broad-based backgrounds which we're going to need.)

- *Question:* Can we let employees move out of the department after 18-24 months of "their" last job assignment which they had control of? (I believe under current guidelines, an employee would not be allowed to move out of the department, if annual reorganizations give them a different job title. Is this true?)

**3.) Transparency**

Is it possible to show a departmental "summary" of how many people are assessed in each category? (# of Exceeds, Meets, Does not Meet) just as a summary ? This would give everyone a quick benchmark within their departments and any departments they are thinking about moving to.

**Make sense or not?**

Michael J Sellers CIRM, CFPIM, CPM

Case 6:12-cv-02050-JSS   Document 84-7   Filed 02/03/14   Page 68 of 85 **JDSEL000385**
**APP747**

Administrative Release
(Letter of Right-To-Sue)

| To: | From: |
|---|---|
| MR. MICHAEL SELLERS<br>[redacted]<br>WATERLOO, IA 50701-9269 | Iowa Civil Rights Commission<br>Grimes State Office Building<br>400 E. 14th Street<br>Des Moines, Iowa 50319 |
| Complaint CP# 05-05-49773 | EEOC# 260-2005-04322C |

This is your Administrative Release (Right-To-Sue) Letter issued pursuant to Iowa Code Section 216.16 and 161 Iowa Administrative Code Section 3.10. It is issued pursuant to the Complainant's request.

The following conditions have been met:

1. The complaint was timely filed with the Iowa Civil Rights Commission (ICRC) as provided in Iowa Code Section 216.15(12);

2. Sixty (60) days have expired since the complaint was filed with ICRC;

3. None of the exceptions set forth in Administrative Rule 161 – 3.10(4) are applicable.

With this Administrative Release, the Complainant has the right to commence an action in state district court. That action must be commenced within ninety (90) days of the issue date 7/26/2012. *The Right-to-Sue Letter is not a finding by ICRC on the merits of the charge. ICRC will take no further actions in this matter.*

A copy of this Administrative Release/Letter of Right-To-Sue has been sent to the Respondent(s) and counsel(s) as shown below. The Code allows any party to obtain a complete copy of the case file after a Right-To-Sue has been issued. Requests for copies should be directed to Marcia Coverdale at ICRC.

The Iowa Civil Rights Commission
Phone: (515) 281-4121
FAX: (515) 242-5840

cc: File
GREGORY T. RACETTE, Complainant's Attorney
JOHN DEERE WATERLOO WORKS

ICRC/S36 (24)

# LAW OFFICES OF
# HOPKINS
# & HUEBNER, P.C.

**Des Moines Office**
2700 Grand Avenue, Suite 111
Des Moines, Iowa 50312-5213
Phone: 515-244-0111
Fax: 515-244-8935

E. J. Giovannetti
Jeff H. Jeffries
R. Ronald Poggeo
Dennis L. Hanssen
Lorraine J. May
William L. Dawe
E. J. Kelly +
Gregory T. Racette #
Valerie A. Landis
Jeff M. Margolin *
Anne L. Clark
Matthew A. Grotnes
Jane V. Lorentzen
Hugh J. Cain
Tina M. Eick
Barbara A. Hering
Erin Q. Pals0
Apryl M. DeLange
Patrick T. Vint *
Nicholas W. Platt
Michelle R. Rodemyer
Brian T. Israel0
Brent L. Hinders
Amy B. Roller

Robert C. Landess (Of Counsel)
Thomas J. Logan (Of Counsel)

Terrence A. Hopkins (Retired)
Frank T. Harrison (Retired)
Fred D. Huebner (1919-1996)
Marvin B. Duckworth (1942-2003)
Philip H. Dorff (1949-2009)

**Quad Cities Office**
**Northwest Bank Tower**
100 E. Kimberly Road, Suite 704
Davenport, Iowa 52806-5944
Phone: 563-445-2264
Fax: 563-445-2267

M. Anne McAtee *
Michael C. Walker *
Paul Salabert, Jr. *
Maggie R. Mantemach *
Amanda R. Newman *
Samuel R. Bailey

**Adel Office**
1009 Main Street
Adel, Iowa 50003-1454
Phone: 515-993-4545
Fax: 515-993-5214

James E. Van Werden
Thomas P. Murphy0
Adam Doll

* Also admitted in Illinois
+ Also admitted in Nebraska
# Also admitted in Michigan
.0 Also admitted in Arizona
0 Also admitted in Missouri

www.hopkinsandhuebner.com
or www.hhlawpc.com

July 13, 2012

Ramona Ubaldo
Iowa Civil Rights Commission
400 E. 14th Street
Des Moines, IA 50319-1004

RE:    Michael Joseph Sellers v. John Deere
       Your Case No.: CP# 05-05-49773
       EEOC# 260-2005-04322C
       Our File No.: 11973-1

Dear Ms. Ubaldo:

I am writing this letter pursuant to my telephone conversation with you on 7/13/2012. We represent Mr. Michael Sellers. He has a discrimination complaint that has been processed through EEOC and also cross filed with you. This was filed in 2005.

His EEOC charge number is 260-2005-04322C. The EEOC made their finding on April 17, 2012 and issued a Right-to-Sue Letter to us at that time.

We will be filing his complaint in Federal Court today.

We are also filing a state claim and need a right to sue letter from you so we can file the state complaint claim.

Could you please issue me a Right-to-Sue Letter.

My name and address is as follows:

        Gregory T. Racette
        2700 Grand Ave.
        Des Moines, IA 50312
        Fax No.: 515-697-4299

If you could please get this to me today, I would really appreciate it.



Ramona Ubaldo
July 13, 2012
Page 2

Very truly yours,

**HOPKINS & HUEBNER, P.C.**

*Gregory T. Racette* (signature)

**Gregory T. Racette**
**Des Moines Office**
Direct dial: 515-697-4272
Direct fax: 515-697-4299
Email: gracette@hhlawpo.com

S:\GTR\11973-0001 Sellers\Correspondence\RUbaldo 120713.docx4336

IOWA CIVIL RIGHTS COMM.
RECEIVED
2012 JUL 24  AM 10: 21



Fields of opportunities

# STATE OF IOWA

THOMAS J. VILSACK, GOVERNOR
SALLY J. PEDERSON, LT. GOVERNOR

IOWA CIVIL RIGHTS COMMISSION
RALPH ROSENBERG
EXECUTIVE DIRECTOR

05/06/2005

MR. MICHAEL SELLERS

WATERLOO, IA 50701-9269

RE: CP# 05-05-49773
EEOC# 260-2005-04322C

Dear MR. SELLERS:

The Equal Employment Opportunity Commission (EEOC) forwarded your complaint cited above for filing with our office as required by law. The complaint charges JOHN DEERE WATERLOO WORKS with a violation of Iowa Code Chapter 216. A date-stamped copy is enclosed.

As EEOC is initially processing your complaint, ICRC will delay taking any action until EEOC completes its work. Therefore, any papers or documents that would aid in the investigation of your complaint should be forwarded to the address listed below. Please keep a copy of everything you send.

U.S. Equal Employment Opportunity Commission
Milwaukee District Office
310 West Wisconsin Avenue, Suite 800
Milwaukee, Wisconsin 53203

After EEOC completes its initial processing, the Iowa Civil Rights Commission may review EEOC's findings to determine whether or not to investigate further.

You may request a letter granting you the right to sue in State District Court. Please read the enclosed Information Sheet regarding 'Right-to-Sue' letters. You need to be aware you can request this letter sixty (60) days after your complaint has been filed under certain conditions listed below:

1. If ICRC has not yet made a determination of No Probable Cause, Not Timely Filed or Not Jurisdictional; **or**
2. If ICRC has not yet negotiated a settlement; **or**
3. If ICRC has not proceeded to setting a date for an Administrative Hearing.

We suggest consulting an attorney before requesting a Right-to-Sue as you have ninety (90) days from the date the letter is issued to file a suit. You may wish to consider contacting the Iowa Bar Association's Lawyer Referral Services at 1-800-532-1108.

PLEASE NOTE: You are responsible for keeping State and Federal agencies notified of any changes of address or telephone numbers. Your failure to notify all agencies of changes may be considered as a failure to cooperate with the investigation. This may result in the appropriate agency closing your file and loss of your rights under the law.

Whenever contacting our office, please provide the CP# cited above.

Sincerely,

Iowa Civil Rights Commission

CC: File



Fields of opportunities

# STATE OF IOWA

THOMAS J. VILSACK, GOVERNOR
SALLY J. PEDERSON, LT. GOVERNOR

IOWA CIVIL RIGHTS COMMISSION
RALPH ROSENBERG
EXECUTIVE DIRECTOR

05/06/2005

Certified Letter

JOHN DEERE WATERLOO WORKS
400 WESTFIELD AVENUE
WATERLOO, IA 50701-5343

> RE: MR. MICHAEL SELLERS
> CP# 05-05-49773
> EEOC# 260-2005-04322C

JOHN DEERE WATERLOO WORKS:

The complaint cited above, initially filed with the United States Equal Employment Opportunity Commission, has now been filed with the Iowa Civil Rights Commission (ICRC) pursuant to Iowa Code Chapter 216. A copy of the complaint is enclosed. The purpose of this letter is to provide legal service upon you as a Respondent in this case.

Under the 'Iowa Civil Rights Act', ICRC has a legal responsibility to assure that a complete and impartial investigation is conducted in this matter. ICRC will delay taking any action until the EEOC completes its process. Therefore, any papers or documents that would aid in the investigation of this complaint should be forwarded to the address listed below. Please keep copies of all documents sent.

> U.S. Equal Employment Opportunity Commission
> Milwaukee District Office
> 310 West Wisconsin Avenue, Suite 800
> Milwaukee, Wisconsin 53203

After the EEOC completes its initial processing, the Iowa Civil Rights Commission may review EEOC's findings to determine whether or not to investigate further.

PLEASE NOTE: 161 Iowa Administrative Code 3.7(2) provides: "Any books, papers, documents, or records of any form which are relevant to the scope of any investigation as defined in the complaint shall be preserved during the pendency of any proceedings by all parties to the proceedings unless the Commission specifically orders otherwise."

Whenever contacting our office, please provide the CP# cited above.

Sincerely,

Iowa Civil Rights Commission

CC: File

ICRC 8525 (0604)

Manager responsibile for this area(MJS

(ACTIONS)

1.) Highlighted a number of developmental improvements which needed to be made to Camelot
2.) Provided significant design input into SAP functionality / reports which are required in order to eliminate Camelot in the future. (Note: This included a lot of the actual calculations and methods being used here at JDWW)
3.) Facilitated order stability improvements within the Enterprise by presented my concepts, approach, and planning process to the Enterprise-level "Acquire Material" and "Production Planning" Community of Practice Teams.(MJS)

IMPACTS:

1.) Reduced order instability by 45%(MJS)
2.) Reduced Work Queue maintenance by 10-15% (MJS)
3.) Reduced our order delinquencies by 20% in the 4th Quarter, as the new planning process was being implemented (Estimated savings is $87,480)(MJS)
4.) Facilitated Enterprise-wide improvements in order stability by sharing my concepts with others in the Enterprise. (MJS)

### Manager/Supervisor Year End Comments

As noted at mid-year, this really is a stretch goal and was factored in above. You did a very solid job of fully meeting the requests we made of you with regards to Parameter Management and order stability. You are known as an "idea person" when it comes to discussing parameters and really understanding how they interact with each other and how they manifest themselves interms of order stability, work queues, etc. This is an area of strength for you and is between a fully meets and exceeds due to the service and responsiveness you have provided to others working in these areas (internally here at Waterloo on Manifest and also with folks at corporate on Parameter management and Camelot). Build upon this in the coming year.
dj 01Dec04.

Primary Job Responsibility (3 of 5)

Maintain Bailments as current

### Employee Ongoing Comments

20May04 -MJS - Not current, but making steady progress.

- $44 Mil of tooling has now been documented.
- 48% (1,486) of the high $ tools are covered by bailment agreements
- Have 53% of the required bailment agreements completed.
- Implemented new Ag Div tooling application in March'04
- Monthly tooling acknowledgements are now occurring, with 70% of all new tools acknowledged electronically.
- Passed Deere & Co audit on Tooling and Bailments.

### Manager/Supervisor Ongoing Comments

Great job. My only hesitation here is that it is very Sellers-dependant. We need to really make bailments are part of everyone's life so that we don't regress if you should change positions. So, document and educate. Use the Intranet for repository instructions. Think about how we can automate the creation of bailments when tooling P.O.'s are issued.

### Employee Year End Comments

30Nov04 - Did not complete goal and failed to pass our recent procurement audit.

ACHIEVEMENTS:

Case 6:12-cv-02050-JSS   Document   Filed 02/03/14   Page 74 of 85   JD-SEL000545
APP753

### Manager/Supervisor Year End Comments

Good! I hope you receive good and honest feedback. dj 01Dec04

## Part V. Year End Review

### Summary Comments

### Employee Mid-Year Summary Comments

20May04 - MJS - I believe I am on target to meet my personal stretch goals, as well as team goals. The process improvement group has a few performance gaps(Web-based scorecard, JD Crop submission level) which we are actively working on and expect to close by the end of the year. Given the challenges in the first part of the year (Covered for Trudy, lost the use of Mitch for 2 months, the resource constraints caused by W.O.W. group and raw material shortages.)we are still in pretty good shape and should be able to overcome these issues in the 2nd half of the year.

### Manager/Supervisor Mid-Year Summary Comments

Yes, you are on target and are leading great efforts with Parm optimization. Keep up the good work and thank you. dj

### Employee Year End Summary Comments

30Nov04

The bulk of this year's efforts have been focused on developing and implementing process and productivity improvements which were critical to our business performance. More specifically, I reduced order instability by 45%, played a major role in reducing our order delinquencies by 20% in the 4th quarter, developed a new planning process, implemented anew web-based tooling application, and facilitated a 90% cycle time improvement in our hot parts process.

In addition, I have supported a number of other factory and enterprise issues which were unforeseen prior to the start of the year. Some of these include:

- Being the primary back-up for Trudy Baird (Ordering hot parts for our lines)for most of the year due to her medical leaves. This required about 10-16 hrs of support per week.
- Being Waterloo's representative on 2 Enterprise-level Community of Practice Teams (Acquire Material & Production Planning)
- Supporting our Logistics group with their manifest implementations
- Providing extensive work queue support to our planners during medical leaves, vacation, etc..
- Helped develop a new year-end AE process which Clyde wanted so that our efforts could be completed by 31Oct.

As evidenced by my performance review, a number of my less significant responsibilities were not met this year. I believe this is due to the added workload which the unforeseen responsibilities caused.

The major "MISS" this year is in the area of Tooling bailments and pssing our procurement audit. Prior audits have focused on improvement trends, so I did not expect such a strict assessment of our status.

Going forward, I need to do a better job of updating supply management managers on my progress, decision points, and performance slippages. (especially when they are related to activities outside our of department.)

### Manager/Supervisor Year End Summary Comments

Mike, 2004 was a challenging year. It was a year that shifted our priorities...for example, more focus on part availability and less

Case 6:12-cv-02050-JSS Document 71-6 Filed 02/03/14 Page 75 of 85 JD-SEL000550
APP754

General Information

| Name | MICHAEL SELLERS |
| GJE Title | Supply Management Specialist III |
| Manager/Supervisor | Daria A. Jerauld |
| SBU | Worldwide Ag |

Part I. Critical Competencies

|  | Target | Manager Assessment |
|---|---|---|
| Values: Sustaining the Deere Values | 4 | 1 |

Comments:

You have alot of Deere experience and knowledge,
please help our staff and others gain from your
experience.BELOW TARGET
D.A. Jerauld: 2 at end of fiscal 2003.

MJS Comments: In the first 6 months, I have
leveraged my
skills in the Tactical Purchasing group by
helping them develop better tools & plans, lower
their inventory levels,& lower the number of
foreign order delinquency

| Vision: Providing a View of the Future | Select One | Select One |
|---|---|---|

Comments:

| Alignment: Establishing Objectives and Performance Plans | 3 | 1 |
|---|---|---|

Comments:

You are able to set goals, do ensure that what
you are doing is aligned with creating SVA and
eliminating non-value add.BELOW TARGET
D.A Jerauld: 2 at end of fiscal 2003.

MJS: I believe I do this well, but have been
asked to focus more on other people's plans &
development in order to leverage my insights.

Examples: New Tools & processes recently
developed for the Tactical group, process
proposals for managing commodity teams and our
focus on electronic integration via file server
applications

| Performance: Holding People Accountable for Achieving Results | 3 | 1 |
|---|---|---|

Comments:

Mike, you are good at defining and planning
goals, however execution is critical. In 2003,
ensure that you execute, stay focused on what you
have set out to do and also ensure you do not
allow scope creep.BELOW TARGET
D.A Jerauld: 3 at end of fiscal 2003.

MJS: Doing well on the OFP issues, but need to
improve my "execution" in other areas (PDP
Playbook, Bailment/Tooling issues, Facilitation
of Staff Mtgs)

Case 6:12-cv-02050-JSS   Document 11   Filed 02/03/14   Page 73 of 85
CONFIDENTIAL                                               JD-SEL000553
                                                           APP755

us.

## Manager/Supervisor Ongoing Comments

Mike, I believe your facilitation skills and follow up with my
managers is a critical aspect of the job. There appears to continued
confusion between the results you report and their results. The
lingering issue of securing an accurate scorecard six months into the
year is very disappointing and the expectation is that you have this
resolved. These issues must be addressed in the second half of the
year by you.

## Employee Year End Comments

Accuracy was improved

## Manager/Supervisor Year End Comments

See final comments below.  D.A. Jerauld.  17 Nov 2003.

## Primary Job Responsibility (2 of 5)

2.) Design a bailment agreement process by 31Oct03 which :

- Clearly outlines how we are going to procedurally insure control
  of company-owned tooling. (Requirements, Steps, Responsibilities,
  Data Retention, & Communication)

- Addresses both Direct & Indirect Material Tooling Assets

- Supports the monthly reporting of financial assists.

- Documents our tooling assets

- Allows Deere to legally recover these assets within pre-defined
  time periods. (i.e. Bailment requirements)

- Provides effective managerial controls

Metrics (Yes/No):

A.) Is there an ISO-related process flow chart and procedure in place?
B.) Do we have signed bailment agreements by 30Mar03 ?
C.) Have Bailment requirements been defined ?
D.) Is there a report for communicating monthly financial assists?
E.) Is there a procedure for recovering Deere tooling?
F.) Have we met Deere audit requirements by 30Mar03?

## Employee Ongoing Comments

MID-YEAR STATUS: "On Schedule"

A.)ISO Flowchart/process issues haven't been addressed yet
B.)95% of bailment agreements are in place and we are working on the
balance.
C.)The requirements have been defined with the exception of the
foreign legality issues.  Process development is ahead of schedule.
(On target to have these issues completed this year)
D.)No, not at mid-year.  This will be completed by June however. (In
time for our external audits)
E.)No procedure has been documented for recovering tools yet (This
was a lower priority and has been targeted for completion in 2nd half
of year)
F.)Believe we were 95% compliant by 30Mar03.  June audit will be our
best gauge of success.

## Manager/Supervisor Ongoing Comments

Mike,I am disappointed with the management of tooling bailment
agreements and the lack of updates at the monthly staff meetings. As
we sit here today, there are 9 tooling bailment agreements

Case 6:12-cv-02050-JSS   Document 1 Filed 02/03/14   Page 75 of 85   JD-SEL000560

APP756

outstanding for various reasons. The reports you have published were outdated and did not appear to be worked for several months. Once again, a gap appeared between the information you are tracking and presenting. More diligent and timely followup is required from you and this must be improved in the second half. JCD 05.28.03

### Employee Year End Comments

- A comprehensive tooling process has been developed and partially implemented (CPS tooling indicators, financial assist reporting, ISO procedures & application for tracking the % of tooling which are covered by bailment agreements.)

- A robust "Ag Division" tooling system has also been developed and is in a final beta test. This should be implemented within the next month.

- Passed ISO audit

- Have over $44 Mil of tooling documented, with 50% of these assets covered by bailment agreements. (3 fold improvement from the information assembled in the 2 prior years)

### Manager/Supervisor Year End Comments

See final comments below.  D.A. Jerauld.  17 Nov 2003.

Primary Job Responsibility (3 of 5)

3.) Facilitate the development of an Indirect Material strategy for PEC's supply management activities by 31Oct03

Metric: Yes/ No

### Employee Ongoing Comments

MID-YEAR STATUS: Not started yet.

### Manager/Supervisor Ongoing Comments

Please ensure you are engaged in this process with the IM&S group.

### Employee Year End Comments

Was not needed

### Manager/Supervisor Year End Comments

See final comments below.  D.A. Jerauld.  17 Nov 2003.

Primary Job Responsibility (4 of 5)

4.) Reduce our Supply Management IT costs by 10%, before 31Oct03

Metric: % of structural cost reduction

Note: Will use the same approach as our annual cost reduction process which tracks the "annualized" impact of the cost savings and not the fiscal average.

### Employee Ongoing Comments

### Manager/Supervisor Ongoing Comments

For your benefit, this goal is dropped for 2003.

### Employee Year End Comments

https://softscape.dcerc.com/scripts/lightyearisapi.dll?performanceviewdoc&sdataevntid=7MD09V806O89R... 6/29/2007

Case 6:12-cv-02050-JSS   Document 1 Filed 02/03/14   Page 78 of 85
CONFIDENTIAL                   JD-SEL000561
APP757

3.)Develop and complete anindividual training plan by 31Oct03, which incorporates the issues listed in the first two developmental goals.

### Employee Ongoing Comments

MID-YEAR STATUS:

My 2003 training plan was developed at the beginning of the year and approximately 90% of the classes has been taken

### Manager/Supervisor Ongoing Comments

Did you complete this?

### Employee Year End Comments

Completed

### Manager/Supervisor Year End Comments

See final comments below.  D.A. Jerauld.  17 Nov 2003.

---

Part V. Year End Review

Summary Comments

### Employee Mid-Year Summary Comments

Mid-Year Status on goals & key activities:

1.)PDP Playbook - Behind Schedule.  I need an aggressive effort in the 2nd half of year to meet this goal

2.)Wheel Weight Project - The original project was replaced by a request to process map this area and to highlight the improvement opportunities.  This has been completed.

3.)Schedule Stability - On Target.  Foreign order stability is in place and I am now focusing my efforts on eliminating our order delinquencies.  "Domestic" order stability and "up-stream" root causes will be addressed in the 2nd half of the year.

4.)Inventory Reduction - On Target

5.)Bailment Process Improvements- On Target

6.)General support / competency improvement - On Target

- Wheel weight assessment (process flow, business case and opportunities have been documented and handed off to an impl. team)

### Manager/Supervisor Mid-Year Summary Comments

MIke, in assessing your mid-year performance,I offer the following:

1) PDP Playbook- good effort on development, critical that you institutionalize and demonstrate results on the Atlas program

2) Wheel Weight Project, process mapping done, what next? What do we gain from this project? Process mapping and tangible benefits will define the level of success relative to this goal.

3) Schedule Stability- Good work in starting to define the problems. The formal measurement systems such as Camelot must be in place and utilized to assess schedule stability. Root cause analysis is a must and I would like to see this defined very soon so we have an opportunity to increase schedule stability.

4) Inventory reduction- please provide details relative to your

Case 6:12-cv-02050-JSS   Document 39-2   Filed 02/03/14   Page 73 of 85

CONFIDENTIAL

JD-SEL000564

APP758

contributions in this area, not sure what the contributions are here.

5)I would not categorize this effort on tooling bailment agreements as on target. There was ambiguity in the reports you provided and it appeared that no followup was done until crunch time, right before the audit. More diligent and frequent followup, accuracy of information that you are disseminating is required, frequent and timely updates are required to demonstrate that we have activities under control. I commend you for your input to the development of a tooling bailment system with corporate IT.

6) General support and competency has improved in some areas, however a key concern and issue is your followup, reporting of accurate data and time responses to queries.

Mike, you have good ideas, are very knowledgeable and you can develop strategies. However, execution, followup, responsiveness, collegial relationships with my staff are three areas you must focus on. This will be critical to my final assessment of your performance at year end. JCD 05.28.2003

Execution and followup-examples include the scorecard, audit compliance activities. Progressive management of these activities were not apparent and it is now a mad scramble to be ready for the audit. The scorecard, six months elapsed and still don't have a credible scorecard.

Responsiveness to queries- customers have voiced their concerns regarding timely feedback or responses, i.e; return phone calls or completion of work. A good example; e.g; bailment and customs issue.

### Employee Year End Summary Comments

Accomplishments:

1.) Developed a new tooling process
2.) 50% improvement in JDWW order stability & the implementation of Camelot.
3.) Over 90% order stability on foreign orders (12 wk period)
4.) Facilitated major improvements in our Summit phase-out effort, which helped us avoid about $500,000 in costs.
5.)Supported a number of special needs which occurred throughout the year. (ie Financial assist reporting, reviewing foreign leadtimes and adjusting CPS parms, facilitated initial inventory plans in tactical group, various types of operational analysis, 2004 planning, etc..)
6.) Implementation of a PDP Playbook process, although it is not fully populated.

### Manager/Supervisor Year End Summary Comments

Mike, being a Process Pro is a difficult task. It puts one in a position where they facilitate others to achieve results. You had a difficult task especially considering you were asked to facilitate your fellow staff members on Clyde's staff and Clyde himself. It's not easy to do. You made some valuable contributions to the organization with the PDP Playbook, bailments, order stability metrics, etc. We will work together in 2004 to achieve results! Thanks.
D.A. Jerauld. 17 Nov 2003.

| Competencies Rating | | | Rating Definitions |
|---|---|---|---|
| Above Target | On Target | Below Target | |
| ○ | ○ | ◉ | |

| Stretch Goals Rating | | | Rating Definitions |
|---|---|---|---|
| High Impact | Moderate Impact | Low Impact | |
| ○ | ◉ | ○ | |

Case 6:12-cv-02050-JSS   Document filed 02/03/14   Page 80 of 85   JD-SEL000565

APP759

...ay transition. I had two suppliers which were in
process of being eliminated. (9321 & 1608) The first
is now completed (desk is down to 22 suppliers) and the
2nd can be completed within the next 30 days with Dave
Christy's help. (CPS issues involved)

### Manager/Supervisor Ongoing Comments

Mike was on target with supplier consolidation and had been
working with Strategic Sourcing to further analyze the
strengths and needs of the commodity supply base.

### Employee Year End Comments

1st half - was meeting goal at the time of my job transition
2nd half - Completed. A process has been defined for
communicating organizational changes. A web site is
operational, concepts & initial letter drafted. We now
need to update it, based on recent changes, and notify our
suppliers on how they can begin to use the web site.

### Manager/Supervisor Year End Comments

Good effort till the time you were in the job.

### Original Goal

3.) Will reduce the supplier locations on desk "FH" by two.

- From either 24 to 22 ( with supplier numbers "3507"
& "3512" included), or

- From 22 to 20 without them (Note: Still do not believe
these suppliers should be on my desk)

METRIC: Will use the supplier count found on the supply
mgmt web site (material procurement and logistics site)

### Performance Goal (4 of 5)

### Goal

4.) Establish a Supply Mgmt Education & Training process
which defines the skills which are needed, assesses our
current status and facilitates 2003 developmental goals and
personal training plans

(Deliverables)
A.) Spreadsheet which highlights future knowledge and skill
levels which will be needed in the department
B.) Guidelines for assessing our current status in each area
C.) 2003 Developmental goals (90% completion)
D.) Schedule of classes for addressing departmental needs
E.) 2003 Personal Training Plans (90% completion)

(Metric - How success will be evaluated)
1.) Has each deliverable been completed? (Yes / No)

### Employee Ongoing Comments

Off to a good start

29Apr02 Review - On schedule to meeting goal (5/12 of year
should equate to 33%, which is where I was at when I
transitioned with Denny Jost.)

Case 6:12-cv-02050-JSS   Document 11 Filed 02/03/14   Page 5 of 5
CONFIDENTIAL   JD-SEL-000570
APP760



**From:** Markley H J
**Sent:** Wednesday, December 08, 2004 1:01 PM
**To:** Schaffter Barry W; Zakaria Adel A
**Cc:** Pinkston Patrick; Kruse Stephen K; Dolan Daniel C; D'Cruz J Clyde
**Subject:** RE: WATERLOO WORKS - PROCUREMENT AUDIT


Everyone,

I trust that any consequences that are appropriate will happen. On the issue of out of date audit procedures, we need to elevate these to Steve Kruse with the supporting documentation so we can get procedures updated. If we get an audit point that is the result of an out of date or impractical procedure, let's be sure we call it like we see it in the audit. Once we commit to solving something, it is really tough to come back later and claim we were wronged.

H.J.

_____

chaffter Barry W
ednesday, December 08, 2004 11:32 AM
aria Adel A
ston Patrick; Kruse Stephen K; Markley H J; Dolan Daniel C; D'Cruz J Clyde
    RE: WATERLOO WORKS - PROCUREMENT AUDIT

*Adel,*

2
Case 6:12-cv-02050-JSS   Document 1   Filed 02/03/14   Page 82 of 85   JD-SEL000648
CONFIDENTIAL   APP761

*I agree with all of the comments that this is unacceptable and there has been a significant amount of discussion in Waterloo about this audit and the discipline that is needed to be in place. I do believe that the approach that has been put in place now will ensure that this is managed more tightly. That procedure is that each quarter the management in the Supply Mgmt area will sign off that all key procedures in their area have been done and validated. These will include the audit point items as well as some others. These sign offs will be required before Dan Dolan and I sign off on the factory financial accuracy each quarter. This will bring the accountability right back to the people involved. Dan had already implemented this last year in some other areas to ensure that the lower level accountability was understood and personally signed for and supply mgmt has now been added to this list.*

*In terms of the ramifications that HJ asks about, let me make a few comments on what happened and is being done. After the 2002 audit, a person in the supply mgmt area was given specific responsibility to perform the procedures necessary to conform to 2 of the audit points. These were the maintenance of the report access after people move or suppliers change and the review of the price consistency report. Even though doing this is very manual and needs work, the individual assigned to this was not doing it, at least on the timely intervals that had been established. When there was knowledge that the audit was coming up, there was a review made by the supply mgmt dept about these procedures and the indication was that they were being done. The Div Mgr for this part of Supply Mgmt was new only a few months before this occurred and was not knowledgeable enough to know if this was accurate or not. The problem here was that there should have been a more disciplined follow up and review to ensure that these were being done, but the management took the input from the employee and did not confirm. They are fully aware that this is not acceptable and cannot happen again. This is part of the reason for the sign off. I have asked Clyde D'Cruz(SM Mgr) and Kevin Keith(HR Mgr) to come back to me with a recommendation on the proper actions for this employee. Given this and some past performance issues, this may include separation.*

*The other audit point on bailment agreements is one that concerns me. This has been on every procurement audit that I have ever seen and it has been always answered from the factory that they will try harder. This is not an acceptable answer and is not the one that we gave this time. First off, there was a lapse in the intensity of getting agreements during 2004 with all of the other shortage and price issues and this is and will continue to be addressed by Supply Mgmt in Waterloo. But with our new arrangement of Division and Enterprise level sourcing this also becomes an issue that needs to be dealt with at that level also. Waterloo will take the lead in working with Division level Strategic Sourcing on this. The other real issue though, is that you cannot get bailment agreements from many foreign suppliers because of their laws and it is time that we acknowledge that and change the procedure or we will continue to see this item forever. Waterloo Supply Mgmt has agreed to take the lead in working with Strategic Sourcing and our legal department to identify when bailment agreements are practical and when they are not and then get this into the supply mgmt procedures and the audit process so we do not continue to see these audit points, if bailment agreements are not possible. This item needs to be dealt with soon or the next factory will see the same repeat point and it will count this time.*

*This is not meant to be excuses, but mainly information so that you know what happened. We had a breakdown in the individual performance of one employee and the lack of discipline and intensity in the follow up of management in the review of the process and its conformance--this has and is being dealt with. We are also making sure that our answers to audit points are exactly what is planned to be performed and areas like the bailment are being addressed to be resolved and not just live with them.*

CONFIDENTIAL

JD-SEL000649
APP762

*Let me know if you have other questions.*
*Barry*

-----Original Message-----
akaria Adel A
esday, December 07, 2004 12:10 PM
affter Barry W
ston Patrick
    FW: WATERLOO WORKS - PROCUREMENT AUDIT

Barry , please get back to me on this , you know the sensitivities now .. adel

_____

**From:** Markley H J
**Sent:** Tuesday, December 07, 2004 12:05 PM
**To:** Kruse Stephen K
**Cc:** Zakaria Adel A; DeBo Craig G
**Subject:** RE: WATERLOO WORKS - PROCUREMENT AUDIT

Steve,

If the manager was in fact misled by his people, there should be consequences. How has this been dealt with. Even though this may not count against us for the 2005 goal, this is not the way to run the business. If we don't establish accountability now, when are we going to do it?

H.J.

_____
ruse Stephen K
esday, December 07, 2004 10:16 AM
kley H J
aria Adel A
    FW: WATERLOO WORKS - PROCUREMENT AUDIT

This is the Supply Management audit that I mentioned earlier, with 3 repeat audit points.  Although Dan Dolan had been told that the points on the previous audit were all "taken care of" by the Supply Management manager (documented in an e-mail), they were not, in fact, all OK -- because the manager was mislead by employees.  The results, three repeat points, are unacceptable, especially since all three of the responses are easily verifiable.  The first point, dealing with employees having access to multiple systems that are in conflict from an internal control standpoint, is common -- but fixable.  The bailment agreements on supplier tooling point is also common.  The third repeat point on working a report that shows different prices paid by our factories for the same part has no internal control ramifications, only operations effect (potential for lower costs).  Like the Des Moines repeat point from an earlier audit, all three of these points had been addressed after the last audit, but the processes were not rigorous enough to continue for 3 years.

Waterloo has instituted a policy listing all audit points on their quarterly internal control certification, requiring that the manager sign off on that the actions promised in the responses are in place.  Dan Dolan is also planning to do limited auditing of compliance.

The only good news is that the audit started before 1 November and is therefore not a part of the "meet with the chairman" requirement.

CONFIDENTIAL
4

**Stephen Kruse**
Director of Finance, WW Ag Division - Tractors and Implements
(309) 765-4307

-----Original Message-----
Cherevko Judy
Tuesday, December 07, 2004 9:28 AM
Laffter Barry W
Lund Gary L; Field James M; Beckenbaugh-Simpson Michele L; Spiers Bradford H; Kirk Ken; Jensen Christian D; D'Cruz J Clyde; Dolan Daniel C; Kruse Stephen K; Markley H J; Olson James P; Zakaria Adel A
     WATERLOO WORKS - PROCUREMENT AUDIT

Sent on behalf of Ken Kirk.

Attached is the final report from the completed procurement audit conducted at Waterloo Works.

<< File: JDWW Final Report.doc >>

*Judy Cherevko*
**Deere & Company, Internal Auditing**
**Physical Location: Cylinder Division**
**909 River Drive - 2nd Floor**
**Moline, IL**
**Phone: (309) 765-7005**
**Email: CherevkoJudy@JohnDeere.com <mailto:CherevkoJudy@JohnDeere.com>**

CONFIDENTIAL

JD-SEL000651
APP764